# 1: CV 00-1942

RECEIVED
SCRANTON

OCT 2 3 2000

MARY E. D'ANDREA, CLERK

PER ____ DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**FORM FOR USE IN APPLICATIONS FOR HABEAS CORPUS UNDER 28 USC §2254**
(eff. 10/18/95)

_____ JEROME K. HOLMES _____ **PETITIONER**
(Full name) (Include name under which you were convicted)

**vs.**                              **CASE NO.** _____
                                  (supplied by the Court)

_____ ROBERT SHANNON _____ **RESPONDENT**
(Name of Warden, Superintendent, Jailor, or authorized
 person having custody of petitioner)
        and
**THE DISTRICT ATTORNEY OF THE COUNTY OF** _DAUPHIN, EDWARD M. MARSICO, JR._
        and

**THE ATTORNEY GENERAL OF THE STATE OF** _PENNSYLVANIA, MICHAEL D. FISHER_
                              **ADDITIONAL RESPONDENT**

_____ JEROME K. HOLMES _____           #DJ-3328
**Name**                               **Prison Number**

_SCI-MAHANOY, 301 MOREA ROAD, FRACKVILLE, PENNSYLVANIA 17932_
**Place of Confinement**

        (If petitioner is attacking a judgment which imposed a
sentence to be served in the future, petitioner must fill in the
name of the state where the judgment was entered.  If petitioner
has a sentence to be served in the future under a federal
judgment which he wishes to attack, he should file a motion under
28 U.S.C.§2255, in the federal court which entered the judgment.)

**PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

### INSTRUCTIONS - READ CAREFULLY

1. This petition must be legibly handwritten or typewritten and
signed by the petitioner. Any false statement of a material fact
in this petition or in a motion for leave to proceed in forma
pauperis may serve as the basis for prosecution and conviction
for perjury. All questions must be answered concisely in the
proper space on the form. Where more room is needed to answer any
question use reverse side of sheet.

2. Additional pages are not permitted. No citation of
authorities need be furnished. If briefs or arguments are
submitted, they should be submitted in the form of a separate
memorandum.

FILED
SCRANTON

NOV 0 7 2000

PER ____ DEPUTY CLERK

1

3. Upon receipt of a fee of $5.00, your petition will be filed if it is in proper order.

4. If you do not have the entire necessary filing fee, you may request permission to proceed in forma pauperis, in which event you must complete the form on the pages eleven and twelve, setting forth information establishing your inability to prepay the full fees and costs or give security therefor. If you wish to proceed in forma pauperis, you must submit an affidavit stating all your assets, and the certification on page thirteen, signed by an authorized prison official.  Discharge of debt in a bankruptcy proceeding shall not include a filing fee (or associated costs and expenses), regardless of an assertion of poverty by the debtor or the debtor's status as a prisoner.

5. Only judgments entered by one court may be challenged in a single petition. If you seek to challenge judgments entered by different courts either in the same state or in different states, you must file separate petitions as to each court.

6. Your attention is directed to the fact that you must include all grounds for relief and all facts supporting such grounds for relief in the petition you file seeking relief from any judgment of conviction.

7. All state remedies must be exhausted before filing a claim under 28 U.S.C. 2254, however, if a prisoner files such a claim before exhausting all state remedies, the federal court has authority to deny it on its merits.  A federal court, when considering a state prisoner's habeas corpus petition, must deem as correct a determination of a factual issue made by a state court, unless the prisoner rebuts the presumption by clear and convincing evidence.  If a petitioner has failed to develop the factual basis of the claim in state court proceedings, a federal court shall not hold an evidentiary hearing on a habeas corpus claim unless the prisoner shows that:
    (1) the claim relies on either a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable, or a factual predicate that could not have previously been discovered through the exercise of due diligence; and
    (2) the facts underlying the claim be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found the prisoner guilty.

8. There is a one-year statute of limitations for filing petitions pursuant to 28 U.S.C. 2254.

9. Federal courts must dismiss claims in a second or successive petition that were presented in a prior petition.

2

10. Federal courts must dismiss claims in a second or successive petition that were not presented in a prior petition unless:

(1) the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(2) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence, and the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the petitioner guilty.

Before such a second or successive petition may be filed in the district court, however, the petitioner must move the court of appeals for an Order authorizing the district court to consider the petition. Petitioner's motion for such an Order must be determined by a three judge panel of the court of appeals, which must grant or deny the motion within 30 days. The court of appeals may grant the motion only if it determines that the petition makes a prima facie showing that it satisfies either (1) or (2) above.

11. Ineffectiveness of counsel during post-trial proceedings in state court shall not be grounds for relief under 28 U.S.C. 2254.

12. When the petition is fully completed, the original and four copies must be mailed to the Clerk of the United States District Court whose address is ROOM 2609, 601 MARKET STREET, PHILADELPHIA, PENNSYLVANIA 19106.

13. Petitions which do not conform to these instructions will be returned with a notation as to the deficiency.

## PETITION

1. (a) **Name and location of court which entered the judgment of conviction under attack:** Court Of Common Pleas Of Dauphin County, Pennsylvania

   (b) **Name of Prosecutor:** A.D.A. Kevin R. Steele

   (c) **Prosecution conducted by District Attorney's Office of** Dauphin **County**

2. (a) **Date of Judgment of conviction:** March 18, 1994

   (b) **Indictment number or numbers:** _____

   **Term:** N/A _____ **Criminal Case Number:** 3344 C.D. 1992

3. **Length of sentence:** 5 to 10 years **Sentencing Judge:** Scott A. Evans

4. **Nature of offense or offenses for which you were convicted:**

   _____ Robbery, Conspiracy and Recklessly Endangering Another Person _____

   _____

5. **What was your plea? (check one)**
   (a) Not Guilty (X)   (b) Guilty ( )   (c) Nolo contendere ( )
   **If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:** _____

   _____

   _____

6. **Kind of trial: (check one)**
   (a) Jury (X)   (b) Judge only ( )

7. **Did you testify at the trial?   Yes ( )  No (X)**

8. **Did you appeal from the judgment of conviction?**
        Yes (X) No ( )

9. **If you did appeal, answer the following:**

   (a) **Name of court:** Superior Ct. Of Pa., at No. 670 HBG. 1994

   (b) **Result:** "Brief For Appellant" QUASHED

   (c) **Date of Result:** November 29, 1994

4

If you filed a second appeal or filed a petition for certiorari in the Supreme Court, give details: _____

_____

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?                      Yes (X)      No ( )

11. If your answer to 10 was "yes", give the following information:

    (a) (1) Name of Court: Court of Common Pleas Dauphin County

        (2) Nature of proceeding:  "PCRA Petition" at No. 3344 C.D. 1992

        _____

        (3) Grounds raised:  (1) Whether the Court lacked jurisdiction. (2) Whether the tainted in-courtroom testimony was inadmissible. (3) Ineffective assistance of counsel. (4) Whether the evidence was insufficient to support the verdict of guilty.

        (4) Did you receive an evidentiary hearing on your petition, application or motion?
            Yes ( )      No (x)

        (5) Result:    Dismissed without an Evidentiary Hearing, and without Ruling on the Merits, i.e., the Court ruled that the PCRA Petition was filed "untimely."

        (6) Date of result:    November 16, 1998

    (b) As to any second petition, application or motion give the same information:

        (1) Name of Court:    Superior Court of Pennsylvania

        (2) Nature of proceeding:  "Brief For Appellant" at No. 145 MDA 1999

        _____

        (3) Grounds raised:   Same Grounds raised as outlined therein paragraph (a)(3), supra.

(4) **Did you receive an evidentiary hearing on your petition, application or motion?**
        Yes ( )      No (X)

(5) **Result:** _____ Denied

(6) **Date of result:** _____ September 2, 1999

(c) **As to any third petition, application or motion, give the same information:**

(1) **Name of Court:** _____ Supreme Court of Pennsylvania

(2) **Nature of proceeding:** "Petition For Allowance of Appeal" at No. 1186 M.D. Allocatur Dkt. 1999

(3) **Grounds raised:** _____

_____ Same Grounds raised as outlined therein paragraph (a)(3), supra.

(4) **Did you receive an evidentiary hearing on your petition, application or motion?**
        Yes ( ) No (X)

(5) **Result:** _____ Denied

(6) **Date of Result:** _____ April 4, 2000

(d) **Did you appeal to the highest state court having jurisdiction the result of any action taken on any petition, application or motion:**
        (1) First petition, etc.          Yes (X) No ( )
        (2) Second petition, etc.         Yes ( ) No ( )
        (3) Third petition, etc.          Yes ( ) No ( )

(e) **If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not:**

_____

_____

_____

6

12. State <u>concisely</u> every ground on which you claim that you are being held unlawfully. Summarize <u>briefly</u> the <u>facts</u> supporting each ground.

CAUTION: In order to proceed in the federal court, you must ordinarily first exhaust your state court remedies, you should set them forth in this petition if you wish to seek federal relief. If you fail to set forth all such grounds in this petition, you may be barred from presenting them at a later date.

For information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted all you state court remedies with respect to them. However, <u>you should raise in this petition all available grounds</u> (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

If you select one or more of these grounds for relief, you must allege facts in support of the ground or grounds which you choose. Do not check any of the grounds listed below. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure, (where the state has not provided a full and fair hearing on the merits of the Fourth Amendment claim).

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest, (where the state has not provided a full and fair hearing on the merits of the Fourth Amendment claim).

(e) Conviction obtained by a violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(i) Denial of effective assistance of counsel.

(j) Denial of right of appeal.

A. Ground one: <u>Whether The Admission Of The In-Courtroom Testimony Of Alleged Victim/Witness Jessie Kenley And His Girlfriend Alicia Luchinsky Identifying Petitioner As The Perpetrator Violated His Constitutional (See BRIEF At Pgs. 8-10)</u>
Supporting FACTS (tell your story <u>briefly</u> without citing cases or law):

<u>          See "Brief In Support Of Petition For Writ Of Habeas Corpus" attached hereto At Pgs. 1-4, supra.</u>

7

**B. Ground two:** <u>Whether The Evidence Was Insufficient To Establish The Verdict Of Guilty Where The Evidence Was So Unreliable And/Or Contradictory That No Reasonable Fact Finder Could Find Petitioner Guilty Of (See BRIEF At Pgs. 11-12)</u>
**Supporting FACTS (tell your story <u>briefly</u> without citing cases or law:**

<u>See "Brief In Support Of Petition For Writ Of Habeas Corpus" attached hereto</u>

<u>At Pgs. 1-4. supra.</u>

**C. Ground three:** <u>Whether Trial Counsel Rendered Deliberate Ineffective Assistance Of Counsel Guaranteed By Pa.Const.Art. I, § 9 And The 6th Amendment When He Refused To Either Request A "No Adverse Inference Instruction (See BRIEF At Pgs. 13-14)</u>
**Supporting FACTS (tell your story <u>briefly</u> without citing cases or law:**

<u>See "Brief In Support Of Petition For Writ Of Habeas Corpus" attached hereto</u>

<u>At Pgs. 1-4; 13-14, supra.</u>

**D. Ground four:**

**Supporting FACTS (tell your story <u>briefly</u> without citing cases or law:**

13. If any of the grounds listed in 12A, B, C, and D were not
previously presented in any other court, state or federal, state
**briefly** what grounds were not so presented, and give your reasons
for not presenting them:

_____

_____

_____

_____

14. Do you have any petition or appeal now pending in any court,
either state or federal, as to the judgment under attack?
                    Yes ( )   No (XX)

15. Give the name and address, if known, of each attorney who
represented you in the following stages of the judgment attacked
herein:
     (a) At preliminary hearing:  Morgan Ulrich_____

_____

     (b) At arraignment and plea:  Morgan Ulrich_____

     (c) At trial:  Jack Hardy. (Re-Trial Anthony Penn)._____

     (d) At sentencing:  ___Anthony Penn_____

     (e) On appeal:  ___Jerry Russo_____

     (f) In any post-conviction proceeding:  Francis M. Socha, who was per-
mitted to "Withdraw As Counsel."_____

     (g) On appeal from any adverse ruling in a post-conviction
proceeding:

_____"Pro Se"_____

_____

_____

_____

9

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?    Yes ( )    No (X)

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
         Yes ( )    No (X)

         (a) If so, give name and location of court which imposed sentence to be served in the future:

_____

_____

         (b) And give date and length of sentence to be served in future:

_____

         (c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?         Yes ( )    No ( )


         I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___October 19, 2000___    _Jerome K Holmes_____
                                       **Signature of Petitioner**


_____
        **Signature of Attorney (if any)**

10

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

---

JEROME HOLMES,

      Petitioner

    VS.

ROBERT SHANNON, Superintendent At
State Correctional Institution, 301
Morea Road, Frackville, Pennsylvania
17932, And EDWARD M. MARSICO JR.,
District Attorney, Dauphin County
Courthouse, Front & Market Streets,
Harrisburg, Pennsylvania 17108,

      Respondents.

CIVIL ACTION NO. _____

---

BRIEF IN SUPPORT OF PETITION FOR
WRIT OF HABEAS CORPUS

---

Filed Pro Se By: Jerome Holmes, #DJ-3328
                 SCI-Mahanoy, 301 Morea Road
                 Frackville, Pa. 17932

**TABLE OF CONTENTS**

Page

Table Of Authority . . . . . . . . . . . . . . . . . . . . . . . . .  i

Jurisdictional Statement . . . . . . . . . . . . . . . . . . . . . .  ii

I - Statement Of Case Showing Exhaustion Of All State
    Court Remedies Within The Meaning Of 28 U.S.C. §
    2254(b,c,) And Facts Upon Which Petitioner Relies
    For The Relief Sought . . . . . . . . . . . . . . . . . . . . .  2

II - Legal Argument In Suppot Of Habeas Corpus Relief . . . . . . . .  19

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

**INDEX TO APPENDIX**

Appendix Exhibit "C"              "Per Curiam" ORDER Dated April 4, 2000 Therein
                                  Dismissing "Petition For Allowance Of Appeal"
                                  At No. 1186 M.D. Allocatur Docket 1999.

# TABLE OF AUTHORITIES

Page

Commonwealth v. Farquharson, 354 A.2d 545 (Pa. 1976) . . . . . . . . . .   11

"          "    v. Holmes, No. 145 MDA 1999 . . . . . . . . . . . . .   6, 7

"          "    v. Holmes, No. 670 HBG. 1994 . . . . . . . . . . . .   5

"          "    v. Holmes, No. 1186 M.D. Allocatur Dkt. 1999 . . . . . . .   7

"          "    v. Holmes, No. 3344 C.D. 1993 . . . . . . . . .   2,4,6,12

"          "    v. Kimball, 453 Pa.Super. 193 (1966) . . . . . . .   13

"          "    v. Pierce, 527 A.2d 973 (Pa. 1987) . . . . . . . . .   13

Gideon v. Wainwright, 372 U.S. 335 (1963) . . . . . . . . . . . . .   13

Herrera v. Collins, 506 U.S. 390 (1993) . . . . . . . . . . . . . .   ii

Hollman v. Gillis, 58 F.Supp.2d 587 (E.D.Pa. 1999) . . . . . . . .   ii

Jackson v. Virginia, 99 S.Ct. 2781 (1979) . . . . . . . . . . . . .   11

Manson v. Brathwaite, 432 U.S. 113 (1972) . . . . . . . . . . . . .   8

McMann v. Richardson, 397 U.S. 759 (1970) . . . . . . . . . . . . .   13

Miller v. N.J. State Dept. of Corrections, 145 F.3d 616 (3d Cir. 1998) . .   ii

Murray v. Carrier, 477 U.S. 478 (1986) . . . . . . . . . . . . .   ii,6,12,14

Napue v. Illinois, 360 U.S. 264 (1959) . . . . . . . . . . . . . .   12

Neil v. Biggers, 409 U.S. 188 (1972) . . . . . . . . . . . . . . .   8

Robinson v. California, 370 U.S. 660 (1962) . . . . . . . . . . . .   ii

Schlup v. Delo, 513 U.S. 298 (1995) . . . . . . . . . . . . . . .   ii, 6

Strickland v. Washington, 466 U.S. 668 (1984) . . . . . . . . . . .   10, 13

Sullivan v. Louisiana, 133 S.Ct. 2078 (1993) . . . . . . . . . . .   11

Triestman v. United States, 124 F.3d 361 (2d Cir. 1997) . . . . . . . .   ii

## STATUTARY PROVISIONS INVOLVED:

Pa.R.Crim.P. 130-140 . . . . . . . . . . . . . . . . . . . . .   3

PaR.Crim.P. 1507(A) . . . . . . . . . . . . . . . . . . . . . .   6

28 U.S.C. § 2254(b)(c) . . . . . . . . . . . . . . . . . . . . .   1, 7

42 Pa.C.S.A. § 9541 . . . . . . . . . . . . . . . . . . . . . .   ii

42 Pa.C.S.A. § 9545(b)(1)(i) . . . . . . . . . . . . . . . . . .   7

42 Pa.C.S.A. § 9545(b)(1)(ii) . . . . . . . . . . . . . . . . . .   7

42 Pa.C.S.A. § 9545(b)(1)(i-iii) . . . . . . . . . . . . . . . . .   7

## JURISDICTIONAL STATEMENT

In **Hollman v. Gillis**, 58 F.Supp.2d 587 (E.D.Pa. 1999), a United States District Court Judge held that a prisoner has no state remedies if his PCRA Petition would be "time barred." The Court held that because the Pennsylvania Supreme Court has "consistently and regulary" applied the **1995 Amendments** to the Post Conviction Relief Act ("PCRA"), **42 Pa.C.S.A. § 9541 et seq.,** as a procedural bar to Post Conviction Relief, remanding a "time barred" case to State Court for exhaustion would be an exercise in futility. The Court also stated, "when a time limitation is considered jurisdictional, it cannot be modified and non-compliance is an absolute bar." **Miller v. New Jersey State Department Of Corrections**, 145 F.3d 616, **617-618 (3d Cir. 1998).**

In **Hollman v. Gillis, supra, at 597-598,** the Court further held that claims based on a "colorable claim of actual innocence" or "miscarriage of justice" now can be litigated in United States District Court without fear of a remand to the State Court system for time consuming exhaustion of non-existent state remedies. Therefore, colorable claims of **"actual innocence"** can be developed in the United States District Court, colorable claims of **"actual innocence"** are **never barred** because the **Eighth & Fourteenth Amendments** prohibits the imprisonment of an **innocent** person. **Herrera v. Collins,** 506 U.S. 390, 432 note 2, 113 S.Ct. 853, 877, note 2 (1993), **Triestman v. United States**, 124 F.3d 361, 379 (2d Cir. 1997), **Robinson v. California,** 370 U.S. 660, 667, 82 S.Ct. 1417, 1421 (1962)("Even one day in prison would be a cruel and unusual punishment for the crime of having a common cold"), **Schlup v. Delo**, 513 U.S. 298, 322, 115 S.Ct. 851, 864-65 (1995), **Murray v. Carrier,** 477 U.S. 478, 496, 106 S.Ct. 2639, 2649 (1986).

In sum, a colorable claim of "actual innocence," or a colorable claim of "Miscarriage of justice" time barred in State Court **can be** brought in the Federal Court.

**I – STATEMENT OF CASE SHOWING EXHAUSTION OF ALL STATE COURTREMEDIES WITHIN THE MEANING OF 28 U.S.C. § 2254(b)(c) AND FACTS UPON WHICH PETITIONER RELIES FOR THE RELIEF SOUGHT:**

1. On September 6, 1992, at approximately 1:00 a.m., Petitioner Jerome Holmes went to a concert at the YMCA located on Sixth and Forrest Streets, Harrisburg, Pennsylvania, where petitioner met a friend named Christopher Mahone. Petitioner and Mahone talked for about thirty (30) minutes and then they decided to go to the Hilmar's Bar located on Adams and Harrisburg Streets, Steelton, Pennsylvania because petitioner had an appointment to meet a photographer there named Leloand Nelson. While petitioner and Mahone were in the process of leaving the YMCA they ran into an associate named Emmet Eden, who asked them where were they heading, and petitioner told Eden that they were on their way to the Hilmar's Bar. Emmet Eden then informed petitioner and Mahone that he and his friend named James Burnett were also heading to the Hilmar's Bar as well. And, shortly thereafter, they all departed the YMCA heading for the Hilmar's Bar with petitioner and his friend Christopher Mahone riding in a red Volvo, Emmet Eden drove a 5.0 Ford Mustang, and his friend James Burnett drove a Saab.

2. On the same morning in question September 6, 1992, at approximately 1:45 a.m., petitioner and Christopher Mahone arrived at the Hilmar's Bar and parked on the corner of Adams and Harrisburg Streets, Steelton, Pennsylvania, while Emmet Eden and his friend James Burnett parked "their" cars on the same intersection directly behind petitioner's red Volvo. Petitioner and Mahone got out of the red Volvo, and Emmet Eden and his friend James Burnett got out of "their" cars, and while the four (4) men were standing on the corner of said intersection talking with one another, a maroon Volkswagon Golf Hatchback pulled up to said corner. The male occupant sitting on the passenger side of said vehicle asked if anyone was interested in buying a **"box speaker"** and petitioner, Mahone, Eden and Burnett all looked at the **"box speaker."** Petitioner then informed the male occupant that **he was not** interested in buying the **"box speaker,"** but Emmet Eden informed the male occupant that he was interested in buying said speaker and requested that the two (2) occupants of said vehicle go around the block and come up Adams Street where **(he)** Emmet Eden could meet them to further discuss the purchase of said **"box speaker."** Emmet Eden and his friend James Burnett accompanied by Christopher Mahone walked down Adams Street to meet the two (2) occupants of the maroon Volkswagon Gulf Hatchback to further discuss the purchase of the **"box speaker."** Meanwhile, petitioner walked to the other side of the corner to the Hilmar's Bar where he met photographer Leloand Nelson regarding their prior arrangements concerning petitioner taking a **photograph.** Petitioner and photographer Leloand Nelson talked and discussed what type of "photo" petitioner was interested in taking, and petitioner decided on

-1-

taking a close-up "photo" of himself sitting on the Red Volvo he was driving. While in the
process of taking said "photo," a young lady named Debbi Potts approached petitioner
and photographer Leloand Nelson and inquired about how much it cost to take a photo.
Photographer Leloand Nelson informed Debbi Potts that a photo costed $5.00 dollars,
and thereafter, petitioner and Ms. Potts <u>conversed</u> and **exchanged telephone numbers.**

3. On the same morning in question September 6, 1992, at approximately 2:10 a.m.,
after petitioner took his **"photograph"** and exchanged telephone numbers with the young
lady he just met named Debbi Potts, petitioner was approached by his friend named
Christopher Mahone who asked petitioner if he was ready to leave Hilmar's Bar and go
get something to eat. Petitioner stated "yes," and he along with Christopher Mahone
left Hilmar's Bar on Adams & Harrisburg Streets enroute to get something to eat at the
"White Store & Restaurant" located on Sixth & Delaware Streets, Harrisburg, Pennsyl-
vania.

4. On the same morning in question September 6, 1992, at approximately 2:40 a.m.,
petitioner and Christopher Mahone arrived at the "White Store & Restaurant" and parked
the Red Volvo on the corner of Sixth & Delaware Streets, Harrisburg, Pennsylvania,
where petitioner and Mr. Mahone went in said "Restaurant" to eat. Shortly thereafter,
petitioner noticed some type of commotion going on out side the "Restaurant" and a
crowd gathering so he stepped outside to see what was going on. Once outside Peti-
tioner noticed   Harrisburg Police Officer's shining flashlights into the window of
the red Volvo he was driving. Petitioner then walked over to the Red Volvo and asked
Harrisburg Police Officers what was the problem, and said Officers asked petitioner
was that his car and he informed said Officers "no," but that he was driving the Red
Volvo that day. Harrisburg Police Officers then advised petitioner that the Red Volvo
was allegedly involved in a robbery which occurred in Steelton, Pennsylvania. Peti-
tioner responded by informing said Officers that it was impossible for the Red Volvo
to be involved in a robbery, because he was driving said vehicle all that day and **he
did not commit no robbery.** Harrisburg Police Officers then handcuffed petitioner and
advised him that he was a suspect in said robbery. Petitioner was then escorted over
to a Steelton, Pennsylvania Police Car where said Officers conducted an **"impermissibly
suggestive"** identification procedure, i.e., Harrisburg Police Officers permitted
alleged victim/witness and **known** drug addict Jessie Kenley and his girlfriend Alicia
Luchinsky, who were sitting in Steelton, Pennsylvania Police Officer Gaither's patrol
car to observe and identify petitioner in a setting which clearly pointed to him as
the prime suspect of the robbery. And, as a direct result of said **"impermissibly**

-2-

**suggestive"** identification procedure, alleged victim/witness and **known** drug addict Jessie Kenley and his girlfriend Alicia Luchinsky identified petitioner as one of the perpetrators who robbed them on Adams Street, Steelton, Pennsylvania on September 6, 1992. Thereafter, petitioner was arrested and transported to Steelton Police Administration Building by Officer Gaither of the Steelton Police Department for booking and questioning. And * * * during said questioning petitioner informed Officer Gaither that he was on the corner of Adams & Harrisburg Streets in front of the Hilmar's Bar taking a **"photograph"** at approximately 2:00 a.m., on September 6, 1992, and that he neither had any **knowledge** nor **involvement** in any robbery.

5. On the same morning September 6, 1992, at approximately 4:30 a.m., petitioner was transported to Harrisburg City Hall where he was provided an Unconstitutional "Preliminary Arraignment" before a District Justice (name unknown), who failed to provide petitioner with a copy of Criminal Complaint with supporting affidavits attached thereto, or a copy of Warrant for his Arrest as mandated by **Pa.R.Crim.P. 130-140,** for robbery, conspiracy, reckless endangering another person, simple assault by physical menace. The District then set Bail at $20,000.00 dollars, petitioner posted bail and thereafter was released from custody.

6. On or about September 16, 1992, Court of Common Pleas of Dauphin County, Pennsylvania appointed Public Defender Morgan Ulrich to represent petitioner as Trial Counsel.

7. On or about the same day September 16, 1992, a "Preliminary Hearing" scheduled before District Justice Steven Semic, and said Hearing was continued due to alleged victim/witness Alicia Luchinsky having a baby.

8. On or about October 20, 1992, a "Preliminary Hearing" was held before District Justice Steven Semic, where the Commonwealth **failed** to meet its burden of proof to establish a prima facie case at **Commonwealth v. Holmes, No. 3344 C.D. 1993,** i.e., the Commonwealth called alleged victim/witness and **known** drug addict Jessie Kenley and his girlfriend Alicia Luchinsky, who were permitted to make an "in-courtroom idenitification" of petitioner in a setting which was **impermissibly suggestive,** and surely **led** to misidentification of petitioner. In addition thereto, said witnesses accused petitioner of being one of the four (4) perpetrators who robbed them of a "box speaker" in the early morning hours of September 6, 1992 at Adams & Harrisburg Streets, Steelton, Pennsylvania.

9. On November 15, 1993, a Jury Trial was held before Honorable Judge Sebastien D. Natale, where the jury received evidence from Steelton Police Officer Robert Gaither, alleged victim/witness and **known** drug addict Jessie Kenley and Alicia Lunchinsky, who accused petitioner of being one of the four (4) perpetrators who robbed them of a "box speaker" on September 6, 1992. And, at the conclusion of Trial, the jury returned a verdict of **"not guilty"** on the simple assault count, **but** was unable to reach a **decision** on the other counts; and, thereafter Trial Judge Natale declared a **"mistrial."**

10. On December 9, 1993, Court Appointed Trial Counsel Jack Hardy filed a "Motion To Sever" in the Court of Common Pleas of Dauphin County at **Commonwealth v. Holmes**, **No. 3344 C.D. 1993.** and

11. On December 15, 1993, Court of Common Pleas of Dauphin County Ordered a hearing on petitioner's "Motion To Sever" to held immediately. And, it should be judicially noted that **no** hearing was ever **held**, and said "Motion" was eventually DENIED by said Court.

12. On or about January, 1994, petitioner's family retained Attorney Anthony Penn to represent him on **re-trial.**

13. On March 15, 1994, **re-trial** was held before Honorable Judge Scott A. Evans where the Jury heard evidence from Steelton Police Officer Robert Gaither, and alleged victim/witness and **known** drug addict Jessie Kenley and his girlfriend Alicia Lunchinsky, who accused petitioner of being one of the four (4) perpetrators who robbed them of a "box speaker" on the early morning hours of September 6, 1992. and

14. On March 18, 1994, petitioner was found **guilty** of robbery, conspiracy and recklessly endangering another person as a **direct result** of the deliberate ineffective assistance of counsel, and the Commonwealth's use of "tainted inadmissible evidences" thereto in violation of the Constitution and Laws of this Commonwealth and of the United States.

15. On March 28, 1994, Trial Counsel Anthony Penn filed "Post Verdict Motions For A New Trial and In Arrest Of Judgment" in the Court of Common Pleas of Dauphin County at **Commonwealth v. Holmes**, **No. 3344 C.D. 1993.**

16. On or about May 30, 1994, Trial Judge Scott Evans erroneously DENIED "Post Verdict Motions For A New Trial and In Arrest Of Judgment" at **Commonwealth v. Holmes**, **No. 3344 C.D. 1993.**

17. On June 1, 1994, Sentencing was held before Trial Judge Scott Evans and petitioner was present with privately retained Counsel Jerry Russo. Trial Judge Evans during sentencing "erroneously" found that petitioner **knew** that alleged co-defendant Christopher Mahone had a firearm and gave it to Emmet Eden to use in the robbery. And, said Judge imposed a mandatory term of imprisonment for use of a firearm in an enumerated felony of 5 to 10 years. Petitioner was permitted to remain free on bail until July 1, 1994, when he was to be committed to the custody of the Sheriff of Dauphin County.

18. On June 30, 1994, Appellate Counsel Jerry Russo filed "Brief For Appellant" in the Superior Court of Pennsylvania at **Commonwealth v. Holmes, No. 670 HBG. 1994**, of which petitioner was unaware and have **no** knowledge of what issue's said Counsel raised in Superior Court. and

19. On July 1, 1994, as a direct result of being accused of crimes and offenses **he did not commit** and that he is **"actually innocent"** thereof, which caused petitioner extreme emotional **distress and duress** and caused him to **fail** to report to prison.

20. On October 28, 1994, a Bench Warrant for petitioner's arrest was issued by Court of Common Pleas of Dauphin County.

21. On November 3, 1994, Assistant District Attorney Richard E. Guida filed a "Motion To Quash" contending that petitioner waived his right for appellate review of his case by failing to timely report for his incarceration.

22. On November 29, 1994, Superior Court of Pennsylvania Granted the Commonwealth's "Motion To Quash" and thereafter issued an Order "Quashing" Brief For Appellant at **Commonwealth v. Holmes, No. 670 HBG. 1994.**

23. On August of 1997, petitioner turned himself in to the custody of the Sheriff of Dauphin County along with his privately retained Counsel Lenora Smith.

24. On August 29, 1997, Counsel Lenora M. Smith filed a "Motion To Reinstate Petitioner's Appeal" in the Superior Court of Pennsylvania at **No. 670 HBG. 1994.**

25. On November 17, 1997, Superior Court of Pennsylvania issued an Order denying petitioner's "Motion To Reinstate His Appeal" at **No. 670 HBG. 1994.** and

26. On August 17, 19998, petitioner filed a "PCRA Petition" in Court of Common

-5-

Pleas of Dauphin County at **Commonwealth v. Holmes, No. 3344 C.D. 1992**, where he sought
relief from a conviction in violation of the Constitution and Laws of this Common-
wealth and the United States.

27. On or about August 21, 1998, Honorable Judge Scott A. Evans appointed Francis
M. Socha to represent petitioner in his PCRA Proceedings. PCRA Counsel Socha erroneous-
ly concluded that petitioner's **claims** had no **merit**, and he further filed a "Motion To
Withdraw As Counsel" **without** properly reviewing the Trial Transcript Records at **Common-
wealth v. Holmes, supra**, which would have clearly disclosed that petitioner's **claims**
did have **merit** and that he was entitled to PCRA Relief.

28. On October 26, 1998, Honorable Judge Scott A. Evans issued an "erroneous"
Order therein permitting PCRA Counsel Francis Socha To Withdraw As Counsel of record
in petitioner's PCRA Proceedings. And, on the same date October 26, 1998, Honorable
Judge Evans filed a clearly **erroneous** "Notice Pursuant To **Pa.R.Crim.P. 1507(A)** Of
Intention To Dismiss Petition For Post-Conviction Collateral Relief" at **No. 3344
C.D. 1992**, which alleged that "there were no genuine issues of fact and the record
reveals that petitioner's claims are waived."

29. On November 4, 1998, petitioner filed his "Response To Notice Pursuant To
**Pa.R.Crim.P. 1507(A)** Of Intention To Dismiss Petition For Post-Conviction Collateral
Relief" and showed and demonstrated that he is a victim of a "fundamental miscarriage
of justice" pursuant to the mandates of law set forth in **Schlup v. Delo**, 115 S.Ct.
851 (1995)(citing **Murray v. Carrier**, 106 S.Ct. 2639 (1986)) and that he is "actually
innocent" of the falsely accused charges at **Commonwealth v. Holmes, supra.**

30. On November 16, 1998, Honorable Judge Scott A. Evans issued an erroneous
Memorandum/Order dismissing petitioner's PCRA Petition at **No. 3344 C.D. 1992**, in which
said Judge **failed** to consider petitioner's "Response" filed on November 4, 1998 and
which entitled petitioner to an Evidentiary Hearing before the Court to support his
claims for PCRA Relief.

31. On March 23, 1999, petitioner filed "Brief For Appellant" in Superior Court
of Pennsylvania at **No. 145 MDA 1999**, wherein he showed and demonstrated that he is
"actually innocent" and the **victim** of a fundamental miscarriage of justice and was
entitled to PCRA Relief.

32. On September 2, 1999, Superior Court of Pennsylvania Judges Del Sole, Orie Melvin, and Tamilia filed an "erroneous" Memorandum/Order therein denying "Brief For Appellant" at **No. 145 MDA 1999**, which alleged that petitioner's PCRA Petition was "untimely" filed and was properly dismissed by the PCRA Court. Said Judges further held that petitioner failed to plead or prove any of the applicable exceptions under **42 PaC.S.A. § 9545(b)(1)(i-iii)**. **See** Appendix Exhibit "AA-1" (Memorandum/Order Dated September 2, 1999) attached hereto this Petition.

33. On September 23, 1999, petitioner filed an "Application For Reargument" in the Superior Court of Pennsylvania at **No. 145 MDA 1999**, where petitioner showed and demonstrated that he **met** the exceptions provided in **42 Pa.C.S.A. § 9545(b)(1)(i-iii)** for untimely filing of PCRA Petitions, i.e., petitioner showed said Court that his failure to file his PCRA Petition within the required time period was the result of "interference by government officials" **[§ 9545(b)(1)(i)]**; and, petitioner further demonstrated that the "facts underlying the claims in his PCRA Petition were **unknown** to him and could not have been ascertained by the exercise of due diligence" **[§ 9545 (b)(1)(ii)]**.

34. On October 18, 1999, petitioner received a "Per Curiam ORDER from Chief Clerk Patricia A. Whittaker of Superior Court of Pennsylvania, which denied "Application For Reargument" at **No. 145 MDA 1999**.

35. On November 8, 1999, petitioner filed "Petition For Allowance Of Appeal" in the Supreme Court of Pennsylvania at **No. 1186 M.D. Allocatur Docket 1999**. and

36. On April 4, 2000, Justices of the Supreme Court of Pennsylvania issued a "Per Curiam" ORDER therein "erroneously" dismissing Petition For Allowance of Appeal at **No. 1186 M.D. Allocatur Docket 1999**; and, thus this "Petition For Writ Of Habeas Corpus" pursuant to **28 U.S.C. § 2254** follows therefrom.


## II – LEGAL ARGUMENT IN SUPPORT OF HABEAS CORPUS RELIEF:

1) Whether The Admission Of The In-Courtroom Testimony Of Alleged Victim/Witness Jessie Kenley And His Girlfriend Alicia Luchinsky Identifying Petitioner As The Perpetrator Violated His Constitutional Rights To Procedural Due Process Of Equal Protection Of The Laws Guaranteed By The 14th Amendment, Where Alleged Eyewitnesses Testimony Was Based Upon An "Impermissibly Suggestive" Pretrial Confrontation Which Surely Led To Misidentification Of Petitioner?

The U.S. Supreme Court explicitly held in **Neil v. Biggers**, 409 U.S. 188, 93 S.Ct. 375 (1972) and adopted by the Court in **Manson v. Brathwaite**, 432 U.S., 114-16, where the Court held that "if pretrial procedures have been unduly suggestive the Court must determine whether an in-courtroom identification will be the product of the suggestive procedures or whether instead it is independently reliable. The factors to be considered include (1) the witness' opportunity to view the perpetrator at the time of crime, (2) the witness' degree of attention, (3) the accuracy of his prior description of the perpetrator, (4) the level of certainty demonstrated at the confrontation, (5) the time between the crime and the confrontation." and

The instant record reveals from the (Statement Of Facts at Pgs. 1-3) hereby realleged herein this paragraph as though fully set forth here that alleged victim/witness and **known** drug addict Jessie Kenley and his girlfriend Alicia Luchinsky were advised by Steelton, Pennsylvania Police Officer Robert Gaither that the Harrisburg Police Department had two possible suspects in **their** custody, along with the two (2) vehicles in question in the area of North 6th Street, Harrisburg, Pennsylvania. Officer Gaither drove Mr. Kenley and Ms. Luchinsky to North 6th Street, where said police conducted an **"impermissibly suggestive"** identification procedure, i.e., petitioner was escorted by Harrisburg Police Officers over to Steelton Police Officer Robert Gaither's patrol car in handcuffs, where Mr. Kenley and Ms. Luchinsky were permitted to **observe** and **identify** petitioner in a setting which clearly pointed to him as the prime suspect of the aforesaid crime. All of which the foregoing surely **led** to misidentification of petitioner and **denied** him produral due process of equal protection of the laws guaranteed by the **14th Amendment**.

**1). The Opportunity To View The Perpetrator At The Time Of Crime:**

Instant record reveals that alleged victim/witness and **known** drug addict Jessie Kenley testified that he had his girlfriend Alicia Luchinsky to drive him to the Hilmar's Bar located on Adams & Harrisburg Streets, Steelton, Pennsylvania, where he got out the car and approached individuals about buying a **"speaker."** See **(T.T. dated March 15, 1994, at Pgs. 80–81)**. Also Ms. Luchinsky testified that she and her boyfriend Jessie Kenley pulled over on Adams & Harrisburg Streets, where Jessie got out of the car to talk with some people about buying a speaker. See **(T.T., at pg. 159)**.

**2). The Witness' Degree Of Attention:**

Alleged victim/witness and **known** drug addict Jessie Kenley testified that the location was **pretty dark,** and because of his **"drug abuse"** he could not **remember** every detail like he could if he **was not** doing drugs, because it **interferred** with his ability to perceive things. See **(T.T., at pgs. 95–96)**. Also Ms. Luchinsky testified that after the individuals took the "speaker" out the car, she **did not** look back anymore. See **(T.T., pg. 198)**.

**3. The Accuracy Of The Witness' Prior Description Of The Perpetrator:**

Mr. Kenley gave the following **vague** and **incomplete** description, i.e., he alleged that on the morning in question September 6, 1992 during the robbery all he could remember is a **"big necklace"** becuase he was **watching the gun the whole time.** See **(.T., at pgs. 138–140)**. Also Ms. Lunchinsky gave the following **vague** and **incomplete** description, i.e., she alleged that she can remember a **"green sweatsuit"** and someone had on a **"denim green jacket with a hat,** nott sure if it was **denim** and if it had **rhinestones on it."** See **T.T., pg. 189)**.

**4. The Level Of Certainty Demonstrated By The Witness At The Confrontation:**

The record reveals that Mr. Kenley and his girlfriend Alicia Luchinsky demonstrated **no** level of certainty at the **"impermissibly suggestive"** confrontation, where said witnesses were advised that Harrisburg Police Department had two (2) possible suspects in their custody, and the alleged get-away vehicles **(a red volvo and a 5.0 mustang)**. Mr. Kenley and Ms. Luchinsky were driven to the area of North 6th Street, Harrisburg, Pennsylvania to observe petitioner in handcuffs in a setting which clearly

pointed to him as the prime suspect of the crime. See (T.T., at pgs. 231-236; pgs. 268-270).

### 5. The Length Of Time Between The Crime And The Confrontation:

Instant record reveals that Mr. Kenley and Ms. Luchinsky were advised twenty (20) minutes after said robbery occurred that Harrisburg Police had two (2) possible suspects in their custody. And, thereafter, an **"impermissibly suggestive"** confrontation was held. See (T.T., at pgs 231-236; and.

Instant record further reveals that Trial Counsel Anthony Penn rendered deliberate ineffective assistance of counsel, see **Strickland v. Washington, 466 U.S. 668 (1984),** when he **failed and refused** to file a "timely" Motion To Suppress Tainted Identification Of alleged victim/witness and **known** drug addict Jessie Kenley and his girlfriend Alicia Luchinsky, who's pretrial identification of petitioner **was not** of an independent origin, **but** was based on an **"impermissibly suggestive"** confrontation. Trial Counsel Penn **did not** have a reasonable basis for his **failure** to file said "Motion To Suppress," and there is a reasonable probability that, **but** for counsel's **errors,** the result of the proceeding would have been **different. Strickland v. Washington, 466 U.S. 668, 694 (1984).**

In summary, the record clearly reveals that Mr. Kenley and Ms. Luchinsky neither gave an **age estimate** of the perpetrator, nor did they give any **details** as to the **facial features** of the perpetrator, **but** were permitted to give "vague and incomplete descriptions" which had <u>no relations</u> to petitioner. All of which the foregoing surely **led** to misidentification of petitioner and **denied** him procedural due process of equal protection of the laws guaranteed by the **14th Amendment.** And, resulted in an **innocent man** being convicted for crimes and offenses **he did not commit.**

**WHEREFORE,** for all the reasons stated above and the indisputable facts in support thereto, petitioner respectfully requests that his "Petition For Writ Of Habeas Corpus" be **GRANTED** and that he be provided an Evidentiary Hearing whereby he can <u>prove</u> by a preponderance of the evidence that he was **denied** procedural due process of equal protection of the laws guaranteed by the **14th Amendment,** which resulted in a "fundamental miscarriage of justice" to <u>occur</u> which **no** civilized society can tolerate as the Court held in **Murray v. Carrier,** 477 U.S. 478 (1986).

2) **Whether The Evidence Was Insufficient To Establish The Verdict Of Guilty Where The Evidence Was So Unreliable And/Or Contradictory That No Reasonable Fact Finder Could Find Petitioner Guilty Of "Falsely" Accused Charges Beyond A Reasonable Doubt Of Which He Is "Actually Innocent" Thereof?**

The law is clearly established that the prosecution bears the burden of proving all elements of offense charged, and must persuade fact finder beyond a-reasonable-doubt of facts necessary to establish each of those elements; the beyond a-reasonable-doubt requirement applies in State as well as Federal proceedings. See **Sullivan v. Louisiana**, 133 S.Ct. 2078 (1993); and **Jackson v. Virginia**, 99 S.Ct. 2781 (1979).

Petitioner submits and avers that the evidence was insufficient to establish the verdict of **guilty** in the instant case matter, where there was **no reliable evidence** received during trial run case that petitioner committed a crime, **i.e.**, instant record reveals that Victim/Witness and **known** drug addict Jessie Kenley testified that he smoked **"cocaine and was high"** on the morning in question September 6, 1992, and he further testified that "he was **craving more cocaine** so he was trying to sell a **speaker** so he could **buy more cocaine."** See (**T.T. Dated March 15, 1994**, at pgs. 91-93). Mr. Kenley also testified that **"the location was pretty dark,** and because of his **drug abuse** he could not **remember every detail** like he could if he was not **doing drugs,** because the **drugs interferred with his ability to preceive things."** See (**T.T.,** at pgs. 95-96). Mr. Kenley testified that "he **intentionally lied** and **did not tell the truth to police and State Court Officials** because he did not want his mother and his friends to know the **truth** that he was on the **Streets doing drugs."** See (**T.T.,** at pgs. 106-108). In addition thereto, Mr. Kenley testified that "he **withheld information concerning the $100.00 dollar transaction, because he did not want the police to know the real reason he was on Adams & Harrisburg Streets."** See (**T.T.,** at pgs. 110-113). and

Instant record further reveals that alleged Victim/Witness Alicia Luchinsky (Jessie Kenley's Girlfriend) admitted under Oath that: "she also **lied** and **withheld evidence** from State Court Officials by only telling a little bit of what happened, and not telling the whole story of what really happened, **because she wanted to be loyal to her husband."** See (**T.T.,** at pgs. 181-186). All of which the foregoing clearly shows and demonstrates that the above testimony of alleged victim.witness and **known** drug addict Jessie Kenley and his girlfriend Alicia Luchinsky was so **"unreliable"** that a verdict of **guilty** cannot be based thereon. See **Commonwealth v. Farquharson**, 467 Pa. 50,60, 354 A.2d 545,550 (1976), where the Pennsylvania Supreme Court held that:

-11-

"Where evidence offered to support a verdict of guilty
is so **unreliable** and/or **contradictory** as to make any verdict
based thereon pure conjecture, a jury may not be permitted
to return such a finding."

Instant record also reveals that evidence was received that **placed** petitioner
near the scene of the crime, **but** was insufficient to establish his "guilt beyond a-
reasonable-doubt," **i.e.,** evidence was received from the Commonwealth's Key Witness
**"THE GUN MAN HIMSELF"** Emmet Eden, who cooperated with Dauphin County District
Attorney's Office in exchange for a **lesser sentence** in violation of the mandates of
law set forth in **Napue v. Illinois, 360 U.S. 264 (1959),** testified that **"petitioner
neither participated in the robbery, nor did he have any knowledge of the robbery."**
See **(T.T., at pgs. 62, 73).** Furthermore, Defense Witness Leloand Nelson (a photographer)
testified that "he took a **photograph** of petitioner on the morning in question September-
ber 6, 1992 and **seen** petitioner drive off afterwards, and **at no time** did he **witness
petitioner commit a robbery."** See **(T.T., at pgs. 329-332).** In addition thereto, Defense
Witness Debbie Potts, who **did not** know petitioner, **but** exchanged telephone numbers
with him on the morning in question September 6, 1992, testified that: **"she saw photo-
grapher Leloand Nelson taking a "photo" of petitioner and she, too, witnessed peti-
tioner commit no robery."** See **(T.T., at pgs. 345-349).** All of which the above describ-
ed and complained of **"unreliable evidence"** received was insufficient to substantiate
the verdict of guilty, where petitioner is **"actually innocent"** and **did not commit the
falsely accused charges** of robbery, conspiracy and recklessly endangering another
person at **Commonwealth v. Holmes, No. 3344 C.D. 1993,** nor did the Commonwealth **prove**
such charges before the Jury; thereby resulting in an **innocent man** being convicted of
crimes and offenses **he did not commit** in violation of the **14th Amendment.**

**WHEREFORE,** for all the reasons stated above and the indisputable facts in
support thereto, petitioner respectfully requests that his "petition For Writ Of
Habeas Corpus" be **GRANTED** and that he be provided an Evidentiary Hearing whereby
he can **prove** by a preponderance of the evidence that he was **Denied** Due Process of
the Laws under the **14th Amendment,** where there was "insufficient evidence to justify
a rational trier of fact to find guilt beyond a reasonable doubt," thereby resulting
in a "fundamental miscarriage of justice" to **occur** which **no** civilized society can
tolerate as the Court held in **Murray v. Carrier, 477 U.S. 478 (1986).**

3) **Whether Trial Counsel Rendered Deliberate Ineffective
   Assistance Of Counsel Guaranteed By Pa.Const.Art. I,
   § 9 And The 6th Amendment When He Refuses To Either
   Request A "No Adverse Inference Instruction" Or
   "Conduct A Colloquy Specifically Waiving The Instruction?"**

The Sixth Amendment right to counsel, through decades of jurisprudence beginning
with **Gideon v. Wainwright**, 372 U.S. 335, 83 S.Ct. 792 (1963), has been held to be a
fundamental right. Moreover, the right to counsel has been held to be meaningless
unless the counsel provided is competent and effective. **Strickland v. Washington**,
466 U.S. 668, 104 S.Ct. 2052 (1984); **McMann v. Richardson**, 397 U.S. 759, 90 S.Ct.
1441 (1970). In order to prevail on a claim of ineffective assistance of counsel,
petitioner must meet the three prong standard governing ineffectiveness claims as
set forth in **Commonwealth v. Pierce**, 515 Pa. 153, 527 A.2d 973 (1987) and **Common-
wealth v. Kimball**, 453 Pa.Super. 193, 683 A.2d 666, 669 (1966) (1) the issues under-
lying the claims of ineffectiveness has arguable merit, (2) counsel did not have a
reasonable basis for the act or omission in question, and (3) there is a reasonable
probability that, but for counsel's errors, the result of the proceeding would have
been different. **Strickland v. Washington**, supra, 466 U.S., at 694 (1984).  and

Petitioner submits, avers and respectfully represents that Trial Counsel Anthony
Penn rendered deliberate ineffective assistance of counsel when he **failed** to request
a "no adverse inference instruction," since the no adverse inference charge in light
of the fact that petitioner did not testify, reminds the Jury not to assume **guilt**
by virtue of petitioner's **silence**. Trial Counsel Penn's inaction was not grounded on
any reasonable basis designed to effectuate petitioner's interest, and said inaction
**denied** petitioner of a **fair trial**, where the Court permitted the Commonwealth to call
alleged victim/witness and **known** drug addict Jessie Kenley and his girlfriend Alicia
Luchinsky, who admitted that "they" **intentionally withheld evidence** from Court Officials
and gave "**false and perjurious**" testimony before the Jury, which accused petitioner
of crimes and offenses **he did not commit**. And, there is a reasonable probabilty that,
**but** for counsel's **errors**, the result of the proceedings would have been different.
In addition thereto, Trial Counsel Penn rendered further ineffectiveness when he
**failed** to introduce during trial **Defense Exhibit No. 2** "Defendant's Photograph that
was taken the morning in question September 6, 1992," would have supported petitioner's
allegations that he was taking said "**photograph**" at the time alleged crime occurred.
And, it should be noted that **Defense Exhibit No. 2** was introduced during petitioner's

-13-

**first trial**, in which said trial resulted in a **hung jury**.  There is a reasonable prob-
ability that, **had** counsel intoduced **Defense Exhibit No. 2**, the result of the proceeding
would have been **different**. All of which the aforegoing  Denial of petitioner's **Sixth
Amendment** right to effective assistance of counsel surely resulted in an **innocent man**
being convicted of crimes and offenses **he did not commit** which violates the **Fourteenth
Amendment**.


   **WHEREFORE**, for all the reasons stated above and the indisputable facts and law
in support thereto, petitioner respectfully requests that his "Petition For Writ Of
Habeas Corpus" be **GRANTED** and that he be provided an Evidentiary Hearing whereby he
can prove by a preponderance of the evidence that he was **Denied** procedural due process
of equal protection of the laws guaranteed by the **Sixth Amendment**, thereby resulting in
a "fundamental miscarriage of justice" to occur which **no** civilized society can tolerate
as the Court found in **Murray v. Carrier**, 477 **U.S.** 478 (1986).


Dated: October  19 , 2000                          Respectfully Submitted,



                                              _Jerome K. Holmes_
                                              Jerome K. Holmes, pro se



-14-



# Supreme Court of Pennsylvania
## Middle District

IRENE M. BIZZOSO
DEPUTY PROTHONOTARY

SHIRLEY BAILEY
CHIEF CLERK

April 4, 2000

434 MAIN CAPITOL BUILDING
P.O. BOX 624
HARRISBURG, PENNSYLVANIA 17108

(717) 787-6181

http://www.courts.state.pa.us

TO:   Jerome K. Holmes

RE:   COMMONWEALTH OF PENNSYLVANIA

                                    RESPONDENT
                          v.

      JEROME K. HOLMES

                                    PETITIONER

      No. 1186 M.D. Allocatur Docket 1999

Dear Counsel:

    This is to advise you that the attached order has been entered on the Petition for Allowance of Appeal filed in the above-captioned matter.

                          Very truly yours,
                          Office of the Prothonotary
                          Supreme Court of Pennsylvania

/ma
c:   Hon. Scott A. Evans
     Dauphin, 3344 C D 1992
     Criminal Division
     Diana Woodside, Esquire

# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

COMMONWEALTH OF PENNSYLVANIA, :  No. 1186 M.D. Alloc. Dkt. 1999

                           Respondent    :  Petition for Allowance of Appeal from
                                         :  Superior Court

              v.                 :

JEROME K. HOLMES,            :

                           Petitioner    :

## ORDER

**PER CURIAM**

     **AND NOW**, this  4th  day of  April, 2000, the petition for allowance of appeal is dismissed.

TRUE & CORRECT COPY

ATTEST:

APR - 4 2000

SHIRLEY BAILEY

## PROOF OF SERVICE

Petitioner certify that on October 19 , 2000, he mailed a copies of this plead-
ing "Brief In Support Of Petition For Writ Of Habeas Corpus" with all relevant legal
documents attached thereto and sent same to the address listed below:

Mary E. D'Andrea, Clerk of Court
United States District Court For
Middle District Of Pennsylvania
United States Post Office
And Courthouse
Scranton, Pennsylvania 18501

Jerome K. Holmes, pro se
#DJ-3328, SCI-Mahanoy
301 Morea Road
Frackville, Pa. 17932

-15-