ORIGINAL

FILED
HARRISBURG

DEC 2 0 2000

MARY E. D'ANDREA, CLERK
Per_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JEROME K. HOLMES,                    :
      Petitioner               :
                       :
                       :
      vs.                      :    CIVIL ACTION NO. 1:CV-00-1942
                       :    (Judge Rambo)
                       :
ROBERT SHANNON, ET AL.,              :
      Respondents              :

**RESPONDENTS' BRIEF IN SUPPORT OF MOTION TO
DISMISS PETITION FOR WRIT OF HABEAS CORPUS**

TO THE HONORABLE SYLVIA H. RAMBO, UNITED STATES DISTRICT JUDGE:

      AND NOW, comes Edward M. Marsico, Jr., District Attorney of

Dauphin County, by James P. Barker, Deputy District Attorney, who, on behalf of

the Respondents, files this answer to the petition for writ of habeas corpus, and in

support thereof, avers the following:

On November 7, 2000, Petitioner, Jerome K. Holmes, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. Holmes was convicted in 1994 of robbery, criminal conspiracy, and recklessly endangering another person. He was sentenced in the Court of Common Pleas of Dauphin County on June 1, 1994, to imprisonment for a period of five (5) to ten (10) years. Holmes failed to report for service of his sentence, and remained a fugitive until July 28, 1997.

During Holmes' absence, a direct appeal filed by his trial counsel was quashed by the Pennsylvania Superior Court due to Holmes' fugitive status. Holmes then filed a petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§9541, et seq., which was denied by the trial court. The Superior Court affirmed the denial of PCRA relief and the Supreme Court of Pennsylvania denied Holmes' petition for allocatur.

Respondent has moved for dismissal of the petition for writ of habeas corpus because the claims asserted by Holmes in the petition are procedurally barred.

# I.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Holmes' conviction stems from events occurring in the early morning hours of September 6, 1992. Trial testimony showed that Holmes assisted James Barnette in removing a speaker from a car occupied by Jessie Kenley and Alicia Luchinsky. At the time, Emmett Eden held the victims at gunpoint. At the end of the first trial, a jury returned a verdict of not guilty as to a charge of simple assault by physical menace, but could not reach a verdict as to the charges of robbery, criminal conspiracy, and recklessly endangering another person. The trial court declared a mistrial on November 18, 1993.

A retrial began on March 15, 1994, and the jury returned a verdict of guilty as to all remaining counts on March 18, 1994. Post-trial motions were denied on May 30, 1994, and Holmes was sentenced on June 1,1994, to imprisonment for a period of five (5) to ten (10) years on the robbery charge. Concurrent sentences of one (1) to two (2) years on the conspiracy and reckless endangerment charges also were imposed.

At the time of sentencing, Holmes was directed to surrender to the Sheriff of Dauphin County to begin serving his sentence. Holmes failed to report, and a capias (bench warrant) was issued. Holmes remained a fugitive and was not taken into custody until July 28, 1997.

While Holmes was a fugitive, his counsel pursued an appeal on Holmes' behalf.  However, on November 29, 1994, the Superior Court granted the Commonwealth's motion to quash the appeal.  Once in custody, Holmes filed, through counsel, a motion to reinstate his appeal. That motion was denied by the Superior Court on November 17, 1997.

On August 17, 1998, Holmes filed his petition under the PCRA. Counsel was appointed by the court, but moved to withdraw based on the lack of merit to the petition.  The court granted counsel's motion to withdraw and issued notice of intent to dismiss the petition on October 26, 1998.  The petition was dismissed by Order of Court dated November 16, 1998.  (The Order of Court dated November 16, 1998, is attached hereto as Exhibit "A").  Specifically, the court found that Holmes had waived his right to litigate under the PCRA through his prior status as a fugitive.  Also, the court dismissed the PCRA petition as untimely.  See Exhibit "A" at 2-3 ¶¶ 1.k., 2.

Holmes appealed to the Superior Court, which affirmed the dismissal on September 2, 1999.  (Judgment and Memorandum Opinion of the Superior Court dated September 2, 1999, is attached hereto as Exhibit "B").  The Superior Court addressed the untimeliness of the petition but did not address the waiver issue.  The Supreme Court of Pennsylvania denied Holmes' petition for allocatur on April 4, 2000.

## II.

## QUESTION PRESENTED

Is a petition for a writ of habeas corpus procedurally barred when a defendant has waived appellate and collateral relief under state law, and any petition for collateral relief is untimely?

## III.

## ARGUMENT

### A. Standard

Procedural default is related to the doctrine of exhaustion. "Absent a valid excuse, a habeas petitioner must present all claims to the state courts." Coss v. Lackawanna County D.A., 204 F.3d 453, 460 (3d Cir.) (*en banc*; citing §2254(b), Rose v. Lundy, 455 U.S. 509 (1982)), cert. granted, 121 S. Ct. 297 (2000). Claims are exhausted if they are "fairly presented" to each level of the state courts. Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000). "Fair presentation" means that both the legal theory and the facts underpinning the federal claim are presented to the state courts and the same method of legal analysis applied in federal court was available to the state courts. Evans v. Court

of Common Pleas, 959 F.2d 1227,1 230 (3d Cir. 1992), cert. dismissed, 506 U.S. 1089 (1993).

However, a claim which is procedurally defaulted under state law, while technically exhausted, also may not be considered by a federal district court under Section 2254; rather, the state procedural rule constitutes an independent and adequate ground for denial of relief. Gray v. Netherland, 518 U.S. 152, 161-62 (1996); Coleman v. Thompson, 501 U.S. 722, 750 (1991). A claim is procedurally defaulted when state law clearly forecloses state court review of the claim. Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir. 1993). However, the rule must be consistently or regularly applied. Banks v. Horn, 1276 F.3d 206, 211 (3d Cir. 1997).

**B. Timeliness**

Under the PCRA, a petition must be filed within one year of the date on which the judgment becomes final, with specified exceptions. 42 Pa.C.S.A. §9545(b)(1). A judgment becomes final at the conclusion of direct review or the expiration of the time for seeking such review. 42 Pa.C.S.A. §9545(b)(3). When the judgment was final before the effective date of the amendment that provided for the one-year limitation, January 16, 1996, the petition is timely if filed within one year of the amendments, or by January 16, 1997. P.L. 1118, No. 32 (Special

Session No. 1), §3(1) (November 17, 1995). Pennsylvania courts lack jurisdiction over untimely PCRA petitions. <u>Commonwealth v. Banks</u>, 726 A.2d 374, 376 (Pa. 1999).

In Holmes' case, direct appeal ended when the Superior Court quashed his appeal, or November 29, 1994. Holmes therefore had until January 16, 1997, to file his PCRA petition, and failed to do so. The petition, filed August 19, 1998, was well beyond the time permitted.

The only exceptions to the timeliness requirement are: (1) interference by state officials with presentation of the claim; (2) the facts supporting the claim were not known to the petitioner and could not have been known despite due diligence; and (3) the claim is based on a right recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania only after the time allowed has expired, and the right has been held to apply retroactively. 42 Pa.C.S.A. §9545(b)(1)(i), (ii), (iii).

The Superior Court held that none of these exceptions applied, though Holmes now contends that the Superior Court ignored his brief in this respect. Actually, review of Holmes' brief (at 11-12) shows that his asserted grounds to toll the one-year limitations period consisted of an argument relating to fraud on the court that is unrelated to the statutory grounds for tolling. (See "Brief for Appellant" filed with the Superior Court attached hereto as Exhibit "C"). No state

official prevented Holmes from presenting any claims to the PCRA court in a timely

fashion, the facts were all known or should have been known to Holmes (as the

facts asserted relate merely to trial testimony), and no newly recognized

constitutional right is asserted.  Holmes' PCRA petition plainly was untimely, and

so his claims under Section 2254 are procedurally barred.

## C.  Waiver

The PCRA provides in part that a petitioner is eligible for relief only if

"the allegation of error has not been previously litigated or waived."  42 Pa.C.S.A.

§9543(a)(3).  Since Holmes filed his PCRA petition on August 17, 1998, and this

provision last was amended in 1995, P.L. 1118, No. 32 (Special Session No. 1),

§1 (Nov. 17, 1995), the current version applies.  Holmes forfeited his right to

direct appeal by becoming a fugitive, and his right to relief under the PCRA was

waived by the failure to present available claims on direct appeal.  Cf.

Commonwealth v. Pirela, 726 A.2d 1026, 1030 (Pa. 1999) (issue waived when it

could have been presented at trial or on appeal and petitioner fails to do so; also

applying "anti-waiver" rules which are not part of amended version of statute),

cert. denied, 120 S. Ct. 804 (2000).

The waiver rule therefore stands as a procedural bar to the

presentation of Holmes' claims in his petition under Section 2254.

### D. Actual Innocence/Miscarriage of Justice

Holmes asserts that he is entitled to present his claims based on exceptions for actual innocence and/or a miscarriage of justice. Review of his brief in support of his petition for writ of habeas corpus, however, demonstrates that no such showing has been made. Rather, Holmes' argument consists of disagreement with the jury's verdict based on purported reasons to discount certain testimony. (Exhibit "C" at ii). Disagreement with the jury's verdict does not support a finding that a miscarriage of justice has occurred, and certainly does not support a claim of actual innocence.

No colorable claim of actual innocence or a miscarriage of justice has been made, and Holmes' petition for writ of habeas corpus is procedurally barred.

### IV.

### CONCLUSION

Holmes' petition for writ of habeas corpus is subject to dismissal as procedurally barred. Holmes did not present his claims to the state courts, and his petition under the PCRA was time-barred. Further, he waived his right to present his claims to the state courts by not presenting available claims to the Superior Court on direct appeal, a result of his own conduct in forfeiting his right to direct

appeal.  Finally, Holmes has made no showing that he has a colorable claim of actual innocence or that a miscarriage of justice has occurred.

WHEREFORE, Respondents respectfully request that the court dismiss the petition for writ of habeas corpus as procedurally barred.

Respectfully submitted,

James P. Barker
Deputy District Attorney

EXHIBIT "A"

COMMONWEALTH OF PENNSYLVANIA    : IN THE COURT OF COMMON PLEAS
   : DAUPHIN COUNTY, PENNSYLVANIA
   :
   :
   :
V.    : NO. 3344 C.D. 1992
   :
   :
   :
   :
JEROME K. HOLMES    : CHARGES: ROBBERY; CRIMINAL
   : CONSPIRACY; RECKLESSLY
   : ENDANGERING ANOTHER PERSON;
   : SIMPLE ASSAULT BY PHYSICAL
   : MENACE

## MEMORANDUM

On November 16, 1998, this Court entered an Order dismissing defendant's

Petition for Post Conviction Collateral Relief.  For purposes of appeal, the following are detailed

reasons in support of such dismissal.

1.      There are no genuine issues of fact and the record reveals that

defendant's claims are waived.

a.      On March 18, 1994, a jury found the defendant guilty of
robbery, criminal conspiracy and recklessly endangering another person.

b.      On June 1, 1994, the defendant received a sentence of not less
than five (5) years nor more than ten (10) years imprisonment on the charge of robbery.  The
defendant also received concurrent sentences of not less than one (1) year nor more than two (2)
years imprisonment on the charges of criminal conspiracy and recklessly endangering another
person.  Defendant was given until July 1, 1994, to turn himself in at the prison to begin serving
his sentence.

RECEIVED

JAN 2 9

CLERK

c.    On June 30, 1994, defendant, through appellate counsel, filed a Notice of Appeal.

d.    On July 1, 1994, defendant failed to report to the prison which, in turn, led this Court to issue a bench warrant for the defendant's arrest on October 28, 1994.

e.    On November 3, 1994, the District Attorney filed a Motion to Quash the defendant's appeal, arguing that defendant forfeited his right to appellate review when he failed to report to the prison to begin serving his sentence. *See, Commonwealth v. Jones, 610 A.2d 439, 441 (Pa. 1992)* (When a defendant becomes a fugitive, he forfeits his right to appellate review; this forfeiture continues despite the defendant's capture or voluntary return to custody).

f.    On November 29, 1994, the Superior Court of Pennsylvania granted the Commonwealth's Motion to Quash.

g.    On July 28, 1997, a sheriff return was filed indicating that the defendant had been apprehended.

h.    On August 29, 1997, defendant filed a Motion to Reinstate his Appeal; this Motion was denied by the Superior Court of Pennsylvania on November 17, 1997.

i.    On August 19, 1998, defendant filed the present Petition for Post Conviction Collateral Relief.

j.    A defendant may be eligible for relief under the Post Conviction Relief Act if he pleads and proves that "the allegation of error has not been previously litigated or waived." *42 Pa.C.S. § 9545(a)(3).*

k.    Defendant's prior status as a fugitive effectively waives his right for review under the Post Conviction Relief Act. Specifically, since defendant's right to appellate review was forfeited as a result of his own conduct (i.e. fugitive status), defendant cannot now use this process to claim the ineffectiveness of trial counsel nor claim ineffective assistance of appellate counsel due to said counsel's failure to raise issues on appeal.

2.    Defendant's Petition for Post Conviction Collateral Relief is untimely filed since it was filed more than one (1) year from the date defendant's judgment became final.

Dist.
    DA
Defendant

BY THE COURT:

_____
Scott A. Evans, Judge

EXHIBIT "B"

J. S55022/99

COMMONWEALTH OF PENNSYLVANIA,     :    IN THE SUPERIOR COURT OF
                                                          :          PENNSYLVANIA
                Appellee

        v.                                            **RECEIVED**

                                                        SEP 0 3 1999
JEROME K. HOLMES,                       DISTRICT ATTORNEY'S
                                                            OFFICE .
                                                       DAUPHIN COUNTY
                Appellant                         :       No. 145 MDA 99

        Appeal from the PCRA Order entered November 16, 1998
            in the Court of Common Pleas of Dauphin County,
                  Criminal Division, at No. 3344 C D 1992.

### *J U D G M E N T*

*ON CONSIDERATION WHEREOF, it is now here ordered and adjudged by this Court that the judgment of the Court of Common Pleas of* DAUPHIN *County be, and the same is hereby* AFFIRMED.



*BY THE COURT:*

*PROTHONOTARY*

*Dated:* ___September 2, 1999___

J. S55022/99

COMMONWEALTH OF PENNSYLVANIA,     :     IN THE SUPERIOR COURT OF
                                  :            PENNSYLVANIA
              Appellee            :
                                  :
              v.                  :
                                  :
JEROME K. HOLMES,                 :
                                  :
              Appellant           :           No. 145 MDA 99

Appeal from the PCRA Order entered November 16, 1998
in the Court of Common Pleas of Dauphin County,
Criminal Division, at No. 3344 C D 1992.

BEFORE:  DEL SOLE, ORIE MELVIN, and TAMILIA, JJ.

MEMORANDUM:                        **F I L E D** SEP - 2 1999

        This is an appeal from the order entered by the Court of Common

Pleas of Dauphin County dismissing  first petition under the Post Conviction

Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546, of Appellant, Jerome Holmes,

as untimely filed.  We affirm.

        On March 18, 1994, Mr. Holmes was convicted, after a jury trial, of

robbery, criminal conspiracy and recklessly endangering another person.  He

was sentenced on June 1, 1994 to a term of imprisonment of not less than

five (5) nor more than ten (10) years for the robbery charge. He also

received two concurrent sentences of one (1) to two (2) years for the

remaining counts.  Mr. Holmes was given until July 1, 1994 to report to

prison to begin serving his sentence.  However, he did not appear, and a

warrant was issued.  In the meantime, on June 30, 1994, Mr. Holmes' trial

counsel filed a direct appeal in the Superior Court at No. 670 Harrisburg

J. S55022/99

1994.   The appeal was quashed on November 29, 1994 because of Mr. Holmes' fugitive status pursuant to **Commonwealth v. Jones**, 530 Pa. 536, 610 A.2d 439 (1992) (holding that when a defendant becomes a fugitive, he forfeits his right to appellate review.) [1]

On July 28, 1997, Mr. Holmes was apprehended.   He first filed a Motion to Reinstate his Appeal which we denied on November 17, 1997 at No.  670 Harrisburg 1994.  No further review was sought until August 19, 1998 when Mr. Holmes filed this, his first, PCRA petition.  In this petition he alleges:   (1) the trial court lacked jurisdiction because he was never served with a valid arrest warrant and no "Bill of Information" was ever filed, (2) the victims' identification of him was tainted as a result of impermissibly suggestive procedures,  (3) trial counsel was ineffective for failing to request a "no adverse inference" jury instruction, and   (4) the evidence was insufficient to substantiate the verdict.   The PCRA court appointed counsel, who filed a **Turner** letter and a motion to withdraw.[2]   The PCRA court dismissed the petition as untimely filed.  This appeal followed.

---

[1] Although it has no affect on the outcome of this appeal, we are well aware of several cases which have been decided since **Jones** addressing forfeiture of appellate rights as the result of flight during the appellate process, including **Commonwealth v. Kindler**, 536 Pa. 228, 639 A.2d 1 (1994).  We note that this absolute rule of forfeiture of appellate rights has since been modified in **Commonwealth v. Deemer**, 550 Pa. 290, 705 A.2d 827 (1997).

[2] This was filed pursuant to **Commonwealth v. Turner**, 518 Pa. 491, 544 A.2d 927 (1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (en banc).

J. S55022/99

Mr. Holmes' petition was filed on August 19, 1998 and is therefore governed by the 1995 amendments to the PCRA,[3] which include changes to when a petition must be filed.  Section 9545(b) of the Act now provides:

**(b)    Time for filing petition. -**

(1)  Any petition under this subchapter, **including a second or subsequent petition**, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i)  the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

(2)  Any petition invoking an exception provided in paragraph (1) shall be filed within 60 days from the date the claim could have been presented.

(3)  For purposes of this subchapter, a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review.

. . .

42 Pa.C.S.A.  § 9545(b) (emphasis added).

---

[3]  The amendments were enacted on November 17, 1995 and made effective 60 days thereafter on January 16, 1996.  Act of November 17, 1995, P.L. 1118 No. 32 (Spec.Sess.No. 1), § 1.

J. S55022/99

In cases where a petitioner's judgment of sentence becomes final prior to the effective date of the amendments, if a first petition is filed within one year of the effective date of amendments it shall be deemed timely. ***Commonwealth v. Alcorn***, 703 A.2d 1054, 1057 (Pa. Super. 1997); Act of November 17, 1995, P.L. 1118, No. 32 (Spec. Sess. No. 1), § 3(1). Mr. Holmes' judgment of sentence became final at the conclusion of direct review by this Court.[4]  Direct review ended on November 29, 1994, when this Court quashed Mr. Holmes' appeal due to his fugitive status, and no further review was granted. ***Alcorn***, 703 A.2d at 1056. Mr. Holmes filed his PCRA petition on August 19, 1998, well beyond one year from the date his judgment of sentence became final.  Furthermore, the one-year grace period for petitions where judgment of sentence becomes final on or before the date of the amendments does not apply.  The grace period expired on January 16, 1997, and Mr. Holmes' petition was filed August 19, 1998, nineteen months later. Accordingly, his petition is untimely unless one of the three exceptions found in § 9545(b)(1) (i-iii) applies.

After reviewing Mr. Holmes' petition we find he has failed to plead or prove any of the applicable exceptions.  Mr. Holmes has not alleged that his failure to raise his claims previously was the result of interference by

---

[4] Mr. Holmes' Motion to Reinstate the Appeal, which we denied on November 17, 1997, does not act to "reset" the date used to determine the finality of the judgment.  This could only have occurred if we had granted the motion. In that case, the date used to determine the finality of the judgment would

J. S55022/99

government officials.  He does not allege that the facts upon which his claims are predicated were unknown to him and could not have been ascertained by the exercise of due diligence.  Nor does he allege a violation of a recently recognized constitutional right that was given retroactive effect. Consequently, Mr. Holmes' petition is time-barred and was properly dismissed by the PCRA court.

Order affirmed.

be thirty days after the disposition of his direct appeal at 670 Harrisburg 1994.

EXHIBIT "C"



IN THE SUPERIOR COURT OF PENNSYLVANIA

MIDDLE DISTRICT

COMMONWEALTH OF PENNSYLVANIA
                Appellee

          VS.

JEROME K. HOLMES,
             Appellant

:
:
:
:
:
:
:
:
:
:
:

NO. 00145MDA99

BRIEF FOR APPELLANT

---

Appeal from the ORDER of the Honorable Scott A. Evans, dated November 16, 1998 in the Court of Common Pleas, Criminal Trial Division, which DENIED/DISMISSED Appellant's "Petition for Post Conviction Relief at Commonwealth v. Holmes, No. 3344 C.D. 1992."

---

Filed Pro Se By: Jerome K. Holmes
                #DJ-3328, SCI-Mahanoy
                301 Morea Road
                Frackville, Pa. 17932

c.      On June 30, 1994, defendant, through appellate counsel, filed a Notice of Appeal.

d.      On July 1, 1994, defendant failed to report to the prison which, in turn, led this Court to issue a bench warrant for the defendant's arrest on October 28, 1994.

e.      On November 3, 1994, the District Attorney filed a Motion to Quash the defendant's appeal, arguing that defendant forfeited his right to appellate review when he failed to report to the prison to begin serving his sentence. *See, Commonwealth v. Jones, 610 A.2d 439, 441 (Pa. 1992)* (When a defendant becomes a fugitive, he forfeits his right to appellate review; this forfeiture continues despite the defendant's capture or voluntary return to custody).

f.      On November 29, 1994, the Superior Court of Pennsylvania granted the Commonwealth's Motion to Quash.

g.      On July 28, 1997, a sheriff return was filed indicating that the defendant had been apprehended.

h.      On August 29, 1997, defendant filed a Motion to Reinstate his Appeal; this Motion was denied by the Superior Court of Pennsylvania on November 17, 1997.

i.      On August 19, 1998, defendant filed the present Petition for Post Conviction Collateral Relief.

j.      A defendant may be eligible for relief under the Post Conviction Relief Act if he pleads and proves that "the allegation of error has not been previously litigated or waived." *42 Pa.C.S. § 9545(a)(3).*

k.      Defendant's prior status as a fugitive effectively waives his right for review under the Post Conviction Relief Act. Specifically, since defendant's right to appellate review was forfeited as a result of his own conduct (i.e. fugitive status), defendant cannot now use this process to claim the ineffectiveness of trial counsel nor claim ineffective assistance of appellate counsel due to said counsel's failure to raise issues on appeal.

2.    Defendant's Petition for Post Conviction Collateral Relief is untimely filed since it was filed more than one (1) year from the date defendant's judgment became final.

Defendant has the right to appeal this decision to the Superior Court of Pennsylvania.  This appeal must be taken within thirty (30) days of the date of this Order.

Furthermore, the Clerk of Court of Dauphin County shall immediately serve a copy of this Order upon the defendant by certified mail, return receipt requested, as well as upon the district attorney by the ordinary practice of their office.

BY THE COURT:

_____
Scott A. Evans, Judge

Distribution:

Jeffrey B. Engle, Deputy District Attorney
✓ Jerome K. Holmes, Defendant   - DJ - 3328
                                  SCI - McHanoy
                                  301 MOREA Rd
                                  FRACKVILLE, PA 17932

## I – STATEMENT OF CASE AND FACTS PURSUANT TO PA.R.APP.P. 1926:

1. On September 6, 1992, at around 1:00 a.m., Appellant went to a concert at the YMCA located on Sixth and Forrest Streets, Harrisburg, Pennsylvania, where Appellant met a friend named Christopher Mahone. Appellant and Christopher Mahone talked for about thirty (30) minutes and then decided to go to the Hilmar's Bar located on Adams and Harrisburg Streets, Steelton, Pennsylvania because appellant had an appointment to meet a photographer named Leloand Nelson there. While appellant and Christopher Mahone were in the process of leaving the YMCA they ran into an associate named Emmet Eden who asked them where were they heading, appellant and Christopher Mahone informed Emmet Eden that they were on their way to the Hilmar's Bar. Emmet Eden then informed appellant and Christopher Mahone that him and his friend named James Burnett were going to Hilmar's Bar as well, and shortly thereafter, appellant, Christopher Mahone left the YMCA together in a red volvo while Emmet Eden drove a 5.0 mustang and his friend James Burnett drove a saab.

2. On the same morning in question September 6, 1992, at around 1:45 a.m., appellant and Christopher Mahone arrived at the Hilmar's Bar and parked on the corner of Adams and Harrisburg Streets, Steelton, Pennsylvania, while Emmet Eden and his friend James Burnett parked their cars on the same intersection directly behind appellant red volvo. Appellant and Christopher Mahone got out the red volvo and Emmet Eden and his friend James Burnett got out their cars and while standing on the corner of Adams and Harrisburg Streets talking with one another a maroon volkswagon golf hatchback driven by what appeared to be a hispanic female, pulled up to the corner of Adams and Harrisburg Streets and a hispanic male on the passenger side asked if anyone was interested in buying a "box speaker" where atwhichtime appellant alone with Christopher Mahone, Emmet Eden and James Burnett all looked at the "box speaker." Appellant then informed the hispanic male that he was not interested in buying the speaker, but Emmet Eden informed the hispanic male that he was interested in buying the "box speaker" and requested that the two occupants of the maroon volkswagon golf hatchback go around the block and come up Adams Street where he could meet them to further discuss the purchase of said speaker. Emmet Eden and his friend James Burnett accompanied by Christopher Mahone walked down Adams Street to meet the two occupants of the maroon volkswagon golf hatchback to further discuss the purchase of the "box speaker," while appellant was approached by the photographer named Leloand Nelson about their prior

arrangements concerning appellant taking a photograph. Appellant and photographer Leloand Nelson talked and discussed what type of photo appellant was interested in taking and appellant decided on taking a close up photo of himself sitting on the red volvo, where atwhichtime a young lady named Debbi Potts approached appellant and photographer Leloand Nelson and inquired about how much it cost to take a photo and photographer Leloand Nelson informed Debbi Potts that a photo costed $5.00 dollars and, thereafter, appellant and Debbi Potts conversed and exchanged telephone numbers.

3. On the same morning in question September 6, 1992, at around 2:10 a.m., after appellant took his photograph and exchanged telephone numbers with the young lady he just met named Debbi Potts, appellant was approached by his friend named Christopher Mahone who asked appellant if he was ready to leave Hilmar's Bar located on Adams and Harrisburg Streets, Steelton, Pennsylvania and go get something to eat at the White Store Restaurant located on Sixth and Delaware Streets, Harrisburg, Pennsylvania. Appellant agreed, and he and Christopher Mahone left Hilmar's Bar enroute to the White Store Restaurant to get something to eat.

4. On the same morning in question September 6, 1992, at around 2:40 a.m., appellant and Christopher Mahone arrived at the White Store Restaurant and parked the red volvo on the corner of Sixth and Delaware Streets, Harrisburg, Pennsylvania, where appellant and Christopher Mahone went in said restaurant to eat. Shortly thereafter, appellant noticed some type of commotion going on out side and a crowd gathering so appellant stepped outside to see what was going on and witnessed Emmet Eden being chased by a Harrisburg Pennsylvania Police Officer and a K-9, appellant also noticed Harrisburg Police Officer's shining a flashlight into the window of the red volvo he was driving. Appellant then walked over to the red volvo and asked the Harrisburg Police Officer's what was the problem and said Officer's asked appellant was that his car and appellant informed said Officer's no, but that he was driving the red volvo that day. Harrisburg Police Officer's then informed appellant that the red volvo was allegedly involved in a robbery which occurred in Steelton, Pennsylvania. Appellant responded by informing said Officer's that that was impossible because he was driving the red volvo all that day and he did not commit no robbery. Harrisburg Police Officer' then detained appellant as a suspect, and shortly thereafter, appellant was handcuff and escorted over to a Steelton, Pennsylvania Police Car where said Police Officer's conducted an impermissibly suggestive identification procedure in violation of the mandates of law set forth in Manson v. Brathwaite, 432 U.S. 98 (1977), i.e., Harrisburg Police Officer's allowed alleged robbery victim's Jessie Kenley and Alicia Luchin

sky who were sitting in the Steelton, Pennsylvania Police Car with Police Officer
Gaither and were asked to observe and identify appellant in a setting which clearly
pointed to appellant as the suspect of said crime. After said impermissibly sug-
gestive procedure was completed and appellant identified as a perpetrator of said
crime, appellant was then illegally and unlawfully arrested, i.e., appellant was
neither served with a valid criminal complaint with supporting affidavits attached
thereto, nor was a valid warrant for appellant's arrest ever filed against him as
madatorily required by Pa.R.Crim.P. 130-140, for robbery, conspiracy, reckless en-
dangering another person, simple assault by physical menace. Appellant was then trans-
ported by Police Officer Robert Gaither to the Steelton, Pennsylvania Police Adminis-
tration Building for booking and questioning. During said questioning appellant in-
formed Officer Gaither that he was on the corner of Adams and Harrisburg Streets on
the morning in September 6, 1992, and that he had no knowledge or involvement in any
robbery.

5. On the same morning in question September 6, 1992, at around 4:30 a.m., appel-
lant was then transported to Harrisburg City Hall where he was provided an unconsti-
tutional "preliminary arraignment" before a District Justice (name unknown) who failed
to provide appellant with a copy of criminal complaint with supporting affidavits
attached thereto, or a copy of warrant for his arrest pursuant to Pa.R.Crim.P. 130.
The District Justice set bail at $20,000 dollars, appellant made bail and, shortly
thereafter, was released from custody.

6. On or about September 16, 1992, Court of Common Pleas Dauphin County, Pennsyl-
vania appointed public defender Morgan Ulrich to represent appellant as trial counsel.

7. On or about the same day September 16, 1992, a Preliminary Hearing was scheduled
before District Justice Steven Semic and said Hearing was continued due to alleged
victim/witness Alicia Luchinsky having a baby. and

8. On or about October 20, 1992, a Preliminary Hearing was held before District
Justice Steven Semic where the Commonwealth failed to meet its burden of proof to estab-
lish a prima facie case at Commonwealth v. Holmes, No. 3344 C.D. 1993, i.e., the Common-
wealth presented evidence and it should be judicially noted that the Court refused to
provide appellant with a copy of "preliminary hearing transcripts" and pursuant to
Pa.R.App.P. 1923 and 1926, petitioner alleges the following:

a) Alleged victim/witness Jessie Kenley testified that on September 6, 1992
at around 2:00 a.m., he and his girlfriend Alicia Lunchinsky where on Adams & Harris-
burg Streets, Steelton, Pennsylvania when they were approached by four (4) black males,

one of the individuals came up to their car and mentioned that's a nice speaker you have, and then the four black males left and three of the black males came back, one of the black males (Emmet Eden) pulled a gun and demanded the speaker. Two of the black males opened the back door and removed the speaker and then the black male with the gun advised witness/victim's Jessie Kenely and his girlfriend Alicia Lunchinsky to pull off before he shoot their car. Mr. Kenely also testified that as he and his girlfried Alicia Lunchinsky were leaving Adams and Harrisburg Street, they noticed two (2) vehicles a red volvo and a 5.0 mustang leaving the area, and that after said cars left he and his girlfried Alicia Lunchinsky went into Hilmar's Bar to call police concerning the robbery. A security guard working at Hilmar's Bar was informed about the robbery and said security guard flagged down Steelton Police Officer Gaither who was driving down Harrisburg Street about the robbery, and then Police Officer Gaither notified area Police Departments including Harrisburg Police to be on the look out for a red volvo and 5.0 mustang.

b) Alleged victim/witness Alicia Lunchinsky testified that on September 6, 1992, at around 2:00 a.m., she and her boyfried Jessie Kenely were on Adams & Harrisburg Streets, Steelton, Pennsylvania when they were approached by four (4) black males, one of the individuals came up to their car and mentioned that's a nice speaker, and then one of the black males pulled out a gun and demanded the speaker, while two of the black males opened the back door and removed the speaker. The black male with the gun then advised victim/witnesses Alicia Lunchinsky and her boyfriend Jessie Kenely to pull off before he shoots their car up. Ms. Lunchinsky further testified that as they were leaving the area of Adams & Harrisburg Streets, she noticed two (2) vehicles a red volvo and 5.0 mustang leaving the area, and that after said cars left the area she and her boyfriend Jessie Kenely went into Hilmar's Bar to call police.

c) Police Officer Robert Gaither of the Steelton Police Department testified that on the morning in question September 6, 1992, a security guard stopped him and advised him that a person had just been robbed at gun point and were inside Hilmar's Bar calling police. Officer Gaither then testified that he talked to the two victim's about the robbery and that they gave a description of two (2) cars a red volvo and a 5.0 mustang that left the area immediately after the robbery occurred. Officer Gaither also testified that after receiving this information he called the County Dispatcher to put out a BOLO for the two (2) vehicles in question and that a few minutes later he received a call from the Harrisburg Police Department that they had two suspects and the two (2) vehicles in question in the area of North 6th Street, Harrisburg, Pennsylvania. Officer Gaither further testified that he immediately drove to 6th and

Peffer Streets, Harrisburg, Pennsylvania, where the two suspects were brought over to his patrol car in handcuffs and were identified by the two victim's as the perpetrators of said crime. and

9. At the conclusion of said hearing, the record reveals that preliminary hearing District Judge Semic manifestly abused his discretion and acted in clear absence of all jurisdiction over subject matter due to the fact that Dauphin County District Attorney's Office failed to file a "Bill of Information" at Commonwealth v. Holmes, No. 3344 C.D. 1993 as mandatorily required by Pa.R.Crim.P. 225, and the Commonwealth further failed to establish a prima facie case to hold appellant over for trial where no evidence was received that appellant committed a crime, and he was subject to an impermissibly suggestive identification procedure.

10. On November 15, 1993, a Trial by jury was held before Trial Judge Sebastian D. Natale where the Trial Court knew it lacked jurisdiction over the subject matter and the person of appellant in State Court proceedings at Commonwealth v. Holmes, No. 3344 C.D. 1993, due to the fact that Dauphin County District Attorney's Office failed to file a "Bill of Information" against appellant convened a trial and there received evidence from Steelton, Pennsylvania Police Officer Robert Gaither, and alleged victim/witnesses Jessie Kenley and Alicia Lunchinsky who alleged appellant along with three (3) co-defendant's robbed them at gun point of a stereo speaker on Adams & Harrisburg Streets, Steelton, Pennsylvania. Appellant was represented by Jack Hardy at said trial. * * * And at the conclusion of trial, the jury returned a verdict of "not guilty" on the simple assault count, but was unable to reach a decision on the other counts, and thereafter, trial Judge Natale declared a mistrial.

11. On December 9, 1993, Trial Counsel Jack Hardy filed a Motion To Sever in the Court of Common Pleas Dauphin County at Commonwealth v. Holmes, No. 3344 C.D. 1993. and

12. On December 15, 1993, Court of Common Pleas Dauphin County Ordered a hearing on appellant Motion To Sever to be held immediately, * * * and it should be judicially noted that no hearing was ever held and said Motion was eventually Denied by said Court.

13. On or about January 1994, Appellant retained Private Counsel Anthony Penn to represent him as Trial Counsel.

14. On March 15, 1994, retrial was held before Trial Judge Scott A. Evans where the Trial Court knew it lacked jurisdiction over the subject matter and the person of appellant in State Court proceedings at Commonwealth v. Holmes, No. 3344 C.D. 1993, conven-

5

ed a trial and there presented false and perjurious testimony and, false and inadmissible evidences to contrive an illegal conviction and false imprisonment, to wit:

### a) Lack Of Jurisdiction:

Instant record reveals that appellant was neither served with a valid criminal complaint with supporting affidavits attached thereto, nor was a valid warrant for his arrest ever filed against him as mandatorily required by Pa.R.Crim.P. 130-140, nor was there a "Bill of Information" filed against appellant pursuant to Pa.R.Crim.P. 225; thereby clearly divesting trial court of all jurisdiction over the subject matter. and

### b) Tainted Identification, Inter Alia:

Instant record reveals that the Court permitted the Commonwealth to call alleged victim/witness Jessie Kenley who's tainted in-courtroom identification of appellant was the result of impermissibly suggestive procedures and said witness was allowed to give false and perjurious testimony to the jury which accused appellant of crimes and offenses he did not commit. and

In addition thereto, the Court permitted the Commonwealth to call alleged victim/witness Alicia Lunchinsky who's tainted in-courtroom identification of appellant was the result of impermissibly suggestive procedures and said witness was allowed to give false and perjurious testimony to the jury which accused appellant of crimes and offenses he did not commit. and

### c) Ineffective Assistance Of Counsel:

Instant record reveals that Trial Counsel Anthony Penn rendered deliberate ineffective assistance of counsel in violation of Strickland v. Washington, 466 U.S. 668 (1984), when Trial Counsel Penn failed and refused to request the Court to deliver the "no adverse inference instruction" to which any defendant who does not testify at trial is entitled since the "no adverse inference" charge reminds the jury that it may not hold against a defendant to testify; including Trial Counsel Penn refusing to introduce during trial Exhibit No. 2 "Defendant's Photograph," which was taken the morning in question September 6, 1992 and which would have supported appellant's allegations that he was taking said photo at the time alleged crime occurred.

### d) Evidence was Insufficient To Substantiate The Verdict:

Instant record further reveals that the Commonwealth failed to prove beyond a reasonable doubt every element of the crime with which appellant was charged, where the Commonwealth was permitted to present false and perjurious testimony from alleged witnesses Jessie Kenley and Alicia Lunchinsky who both gave contradicting testimony and testified under Oath that they both "lied" and "with held" evidence from State Court Officials. * * * Including but not limited to alleged co-defendant Emmet Eden testifying that appellant neither participated in any robbery, nor had any knowledge of any robbery, see Exhibit "A-1" (Trial Transcripts, Herein After T.T. Dated March 15, 1994, at Pgs. 62, 73).[1] Also defense witness Leloand Nelson a photographer testified that he took a photo of appellant on the morning in question September 6, 1992, and saw appellant drive off afterwards, and at no time did he witness a robbery. See Exhibit "A-1" (T.T. Dated March 15, 1994, at Pgs. 329-332). In addition thereto, defense witness Debbie Potts who did not know appellant, but who exchanged telephone numbers with him on the morning in question September 6, 1992 testified that she saw photographer Leloand Nelson take a photo of appellant and she, too, saw no robbery, see Exhibit "A-1" (T.T. Dated March 15, 1994, at Pgs. 345-349); all of which clearly shows and demonstrates that the evidence received was insufficient to substantiate the verdict of guilty where appellant did not commit the falsely accused charges of robbery, conspiracy and recklessly endangering another person at Commonwealth v. Holmes, No. 3344 C.D. 1993, nor did the District Attorney's Office substantiate such charges before the jury, thereby resulting in a "fundamental miscarriage of justice" which no civilized society can tolerate under the Due Process Clause of the 6th and 14th Amendment of the U.S. Constitution. and

15. On March 18, 1994, Appellant was found guilty of robbery, conspiracy and recklessly endangering another person as a direct result of the deliberate ineffective assistance of counsel, and the Commonwealth's use of false and inadmissible evidences thereto.

16. On March 28, 1994, Trial Counsel Anthony Penn filed "Post Verdict Motions For A New Trial and In Arrest Of Judgment" in the Court of Common Pleas Dauphin County at Commonwealth v. Holmes, No. 3344 C.D. 1993.

17. On or about May 30, 1994, Trial Judge Scott Evans invidiously and discriminatorily Denied "Post Verdict Motions For A New Trial and In Arrest Of Judgment" at Commonwealth v. Holmes, No. 3344 C.D. 1993. and

---

1/ Appendix Exhibit "A-1" is not attached hereto this Brief due to the fact appellant

18. On June 1, 1994, Sentencing was held before Trial Judge Scott Evans and appellant was present with privately retained counsel Jerry Russo. Trial Judge Evans "erroneously" found that appellant knew that alleged co-defendant Christopher Mahone had a firearm and gave it to Emmet Eden to use in the robbery. Trial Judge Evans imposed a mandatory term of imprisonment for use of a firearm in an enumerated felony of 5 to 10 years. * * * And by prior agreement appellant was allowed to remain free on bail until July 1, 1994, when he was to be committed to the custody of the Sheriff of Dauphin County.

19. On June 30, 1994, privately retained counsel Jerry Russo filed an "Appeal" in the Superior Court of Pennsylvania at Commonwealth v. Holmes, No. 670 Harrisburg 1994, of which appellant is unaware and have no knowledge of what issue's said Counsel raised in Superior Court of Pennsylvania.

20. On or about November 1994, Justice's of Superior Court of Pennsylvania Dismissed petitioner's "Appeal" at Commonwealth v. Holmes, No. 670 Harrisburg 1994; and

21. On August 17, 1998, Appellant filed a "PCRA Petition" in Court of Common Pleas Dauphin County, Pennsylvania at Commonwealth v. Holmes, No. 3344 C.D. 1992 therein raising the following Meritorious Grounds for PCRA Relief:

a) Whether Court of Common Pleas Dauphin County, Pennsylvania acted in "clear absence of all jurisdiction" over the subject matter and the person of petitioner absenteither a valid criminal complaint with supporting affidavits attached thereto, or a valid warrant for petitioner's arrest, or a "Bill of Information" as mandated by Pa. R.Crim.P. 225;

b) Whether the admission of the in-courtroom testimony of alleged eye-witnesses Jessie Kenley and Alicia Lunchinsky identifying petitioner as the perpetrator violated his constitutional rights to procedural due process of equal protection of the laws guaranteed by the Fourteenth Amendment, where alleged eyewitnesses testimony was based upon an "impermissibly suggestive" pretrial confrontation which led to misidentification of petitioner;

c) Whether Trial Counsel rendered deliberate assistance of counsel and acted in criminal conspiracy therewith Dauphin County District Attorney's Office to DEPRIVE petitioner of right guaranteed by Pa. Const.Art. I, § 9 and the 6th Amendments when he refused to either request a "no adverse inference instruction" or "conduct a colloquy waiving the instruction;" and

d) Whether the evidence was insufficient to establish the verdict of guilty where the evidence was so unreliable and/or contradictory that no reasonable fact finder could find petitioner guilty of "falsely" accused charges beyond a reasonable doubt of which he is "actually innocent" of.

22. On or about August 21, 1998, Dauphin County Trial Judge Scott A. Evans appointed Francis M. Socha as PCRA Counsel, who clearly showed and demonstrated that there was a direct conflict of interest between the Court and appointed PCRA Counsel Francis Socha in defense of his client Jerome K. Holmes, i.e., it can be inferred that Court Appointed PCRA Counsel Socha acted in "criminal conspiracy" therewith Dauphin County District Attorney's Office to DEPRIVE appellant of procedural due process of equal protection of the laws pursuant to 42 Pa.C.S.A. § 9541 et seq., see Tower v. Glover, 467 U.S. 914, 919-20 (1984), via willfully filing a "Motion to Withdraw As Counsel" and incompetently failing to properly review the Trial Transcript Records at Commonwealth v. Holmes, supra, which would have clearly disclose the unconstitutional and "illegal conduct" outlined therein paragraph 21, supra, to be raised before PCRA Court that was filed August 17, 1998.

23. On October 26, 1998, Trial Judge Scott A. Evans issued an "arbitrary and capricious" Order therein permitting Court Appointed PCRA Counsel Francis Socha to Withdraw as Counsel of record in appellant's PCRA proceedings, * * * and on the same date October 26, 1998, Trial Judge Evans filed a clearly erroneous "Notice Pursuant To Pa.R.Crim.P. 1507(A) of Intention To Dismiss Petition for Post-Conviction Collateral Relief" which alleged that "there were no genuine issues of fact and the record reveals that petitioner's claims are waived." and

24. On November 4, 1998, Appellant filed "Petitioner's Response To Notice Pursuant To Pa.R.Crim.P. 1507(A) of Intention To Dismiss Petition for Post-Conviction Collateral Relief" and clearly showed and demonstrated that appellant is a victim of a "fundamental miscarriage of justice" pursuant to the mandated of law set forth in Schlup v. Delo, 115 S.ct. 851 (1995) (citing Murray v. Carrier, 106 S.Ct. 2639 (1986)) and that he is actually innocent of the "falsely accused charges" at Commonwealth v. Holmes, supra, where the testimony of alleged victim/witness and known drug addict Jessie Kenley and his girlfriend Alicia Lunchinsky was so unreliable and/or contradictory that "no reasonable jury would have found appellant guilty beyond a reasonable doubt of falsely accused charges at Commonwealth v. Holmes, supra."

25. On November 16, 1998, Dauphin County Trial Judge Scott A. Evans issued an "arbit-rary and capricious" Memorandum Order dismissing appellant's PCRA Petition at <u>Commonwealth v. Holmes</u>, supra, in which said Judge failed to consider appellant's "Response" filed on November 4, 1998 and which entitled appellant to an Evidentiary Hearing before the Court to support his claims for PCRA Relief.

26. On december 2, 1998, Appellant filed "Notice Of Appeal" in Court of Common Pleas Dauphin County, Pennsylvania at <u>Commonwealth v. Holmes</u>, No. 3344 C.D. 1992 from the Order dismissing PCRA Petition dated November 16, 1998 entered by Trial Judge Scott A. Evans.

27. On February 2, 1999, Appellant filed "Criminal Docketing Statement" in superior Court of Pennsylvania at <u>Commonwealth v. Holmes</u>, No. 00145MDA99; and, thus this Brief for Appellant follows therefrom.

II – LEGAL ARGUMENT IN SUPPORT OF REVERSAL AND REMAND FOR MANDATORY EVIDENTIARY

HEARING PURSUANT TO PA.R.CRIM.P. 1508:

      1. Whether Dauphin County Trial Judge Scott Evans manifestly abused his
        judicial discretion under 42 Pa.C.S.A. § 9545(b)(1)(i–iii) when he Dis-
        missed Appellant's PCRA Petition as "untimely filed" and without provid-
        ing him an Evidentiary Hearing to prove, by preponderance of evidence,
        where instant record clearly shows 16 P.S. § 1405 Wilful Misconduct
        committed by Dauphin County District Attorney's Office who falsely
        accused Appellant of crimes and offenses he did not commit and that
        he is "actually innocent" of which has caused him extreme emotional
        distress and duress which caused him to flee and refuse to turn himself
        in to authorities on said "falsely accused charges,"i.e., said prosecutor
        perpetrating "fraud on the Court" by way of convening a trial at Common-
        wealth v. Holmes, No. 3344 C.D. 1992 knowing that a valid "Bill Of Infor-
        mation" covering falsely accused charges was never filed and during trial
        run case knowingly used "false testimony" of alleged witness and known
        drug addict Jessie Kenley, inter alia, was the result of unconstitutional
        "interference" of aforenamed Governmental Official and his co-conspirators
        with presentation of said claim(s) in violation of the constitution and
        laws of this Commonwealth and the United States thereto.

    The law is clearly established, see Wilkin v. Sunbean Corporation, 466 F.2d 714,

at 717 (10th Cir. 1972)(citing Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S.

238, 64 S.Ct. 977), where the petitioner sought complete relief under Rule 60(b)(3), Fed.R.Civ.P.,

which equity allows the Court to set aside a judgment obtained by fraud that was discover-

ed after entry of judgment, citing Brady v. Beams, 132 F.2d 985 (10th Cir.), cert. denied,

319 U.S. 747, and relief may be granted when the application is clearly substantiated by

adequate proof. See Consolidated Gas & Equipment Co. of America v. Craver, 257 F.2d 111,

114 (10th Cir.). The Court held that a Rule 60(b) Motion is addressed to the sound dis-

cretion of the trial court, and the burden of establishing fraud is on the movant. Abel v.

Tinsley, 338 F.2d 514, 516 (10th Cir.); see also Thomas v. Colorado Trust Deed Funds, Inc.,

366 F.2d 136, 139 (10th Cir.). the Court also noted that a showing must be made that the

movant would have had a good claim or defense in the main action. See Gomes v. Wiliams,

420 F.2d 1364, 1366 (10th Cir.). * * * The Court in Wilkin v. Sunbean Corp., supra, at

717 further pointed out that Rule 60(b) does not limit a court's power to redress fraud

on the court. The term "fraud on the Court" is a nebulous concept. A clear example is the

corruption of judicial officers. Root Refining Co. v. Universal Oil Products Co., 169 F.

2d 514, 534 (3d Cir.), cert. denied sub nom. Universal Oil Products v. William Whitman Co.,

-11-

335 U.S. 912, 69 S.Ct. 481. The Court in Wilkin, supra, cited Hazel-Atlas Glass Co. v.
Hartford-Empire Co., 322 U.S. 238, 64 S.Ct. 997, where the Supreme Court extended the con-
cept to a situation concerning a BOGUS SCIENTIFIC ARTICLE was published to affect the out-
come of patent litigation. The fabricated article was relied on, at least in part, by the
Court of Appeals in its decision. The Court: Hazel-Atlas is an example of fraud which so
defules the Court "that the judicial machinery can not (sic) perform in the usual manner
its impartial task of adjudging cases that are presented for adjudication." Martina Theatre
Corp. v. Schine Chain Theatres, Inc., 278 F.2d 798, 801 (2d Cir.) quoting 7 Moore, Federal
Practice II 60.33, at 512 ; cf. McNair v. Weikers, 446 A.2d 905, at 909 (Pa.Super. 1982)
(defendant's conduct need not raise to fraud or concealment in the strictest sense, that
is, with an intent to deceive, unintentional fraud or concealment is sufficient to toll
the running of Statute of Limitations.). * * * and Appellant makes reference to the man-
dates of law set forth in Schlup v. Delo, 115 S.Ct. 851 (1995)(citing Murray v. Carrier,
106 S.Ct. 2639 (1986)) in the he is a victim of a "fundamental miscarriage of justice"
and is "actually innocent" of falsely accused charges at Commonwealth v. Holmes, supra,
where instant record reveals that Dauphin County Assistant District Attorney Kevin R.
Steele committed "fraud on the Court" by way of using the "false testimony" of alleged
victim/witness and known drug addict Jessie Kenley and his girlfriend Alicia Lunchinsky
which was so unreliable and/or contradictory that "no reasonable jury would have found
appellant guilty beyond a reasonable doubt of falsely accused charges at Commonwealth v.
Holmes, supra;" all of which the foregoing caused appellant extreme emotional "distress
and duress" which caused him to flee and refuse to turn himself in to authorities on said
falsely accused charges on July 1, 1994 until August 1997. and

The Court in Wilkin v. Sunbean Corp., supra, at 717 was concerned with documents
which both it and the trial court deem irrelevant and with credibility questions which
the trier of facts has determined adversely to appellant, as in instant "Brief" before
this Court where the following Federal Constitutional violations disclose how Dauphin
County, Pennsylvania Assistant District Attorney  Kevin R. Steele criminally perpetrated
"fraud on the Court," the Jury and the People of the Commonwealth of Pennsylvania, to
wit:

    2) Whether Court of Common Pleas Dauphin County, Pennsylvania acted in "clear absence of all jurisdiction" over the subject matter and the person of petitioner absent either a valid criminal complaint with supporting affidavits attached thereto, or a valid warrant for petititoner's arrest, or a "Bill of Information" as mandated by Pa. R.Crim.P. 225?

The law is clearly established in Pennsylvania, e.g., <u>Slezynger v. Bischok</u>, 307 A.2d 405, 224 Pa.Super. 552, which held that before a Court may determine legal action it must possess both subject matter jurisdiction and jurisdiction over the person. and

Instant record jointly and severally reveals that appellant herein was illegally arrested on September 6, 1992, where appellant  was neither served with a valid criminal complaint with supporting affidavits attached thereto, see <u>Commonwealth v. Flowers</u>, 369 A.2d 362 (Pa.Super. 1976); nor was a valid warrant for his arrest ever filed as mandated by Pa.R.Crim.P. 130÷140(a), see <u>Commonwealth v. Rose</u>, 261 A.2d 586 (Pa. 1970); nor was a "Bill of Information" filed against appellant as mandatorily required by Pa.R.Crim.P. 225; all of which the foregiong clearly shows and demonstrates that Dauphin County Court of Common Pleas <u>lacked</u> jurisdiction over the subject matter and the person of appellant  in State Court proceedings at <u>Commonwealth v. Holmes</u>, No. 3344 C.D. 1993. See <u>Commonwealth v. Cano</u>, 128 A.2d 358, 182 Pa.Super. 524.

WHEREFORE, for the specific reasons stated above, and the legal authority in support thereto, which demonstrates that Dauphin County Court of Common Pleas lacked jurisdiction in which it could try, convict and sentence  appellant absent a "Bill of Information," thereby resulting in a "fundamental miscarriage of justice" as the Court declared in <u>Commonwealth v. Lawson</u>, 549 A.2d 107 (Pa. 1988); and <u>Murray v. Carrier</u>, 477 U.S. 478 (1986); all of which requires this Honorable Court to GRANT petitioner an immediate discharge from the unlawful physical confinement that he so now bears.

3) Whether the admission of the in-courtroom testimony of alleged eye-witnesses Jessie Kenley and Alicia Lunchinsky identifying petitioner as the perpetrator violated his constitutional rights to procedural due process of equal protection of the laws guaranteed by the Four-teenth Amendment, where alleged eyewitnesses testimony was <u>based</u> upon an impermissibly suggestive pretrial confrontation which led to misidentification of petitioner?

The U.S. Supreme Court explicitly held in <u>Neil v. Biggers</u>, 409 U.S. 188, 93 S.Ct 375 (1972) and adopted by the Court in <u>Manson v. Brathwaite</u>, 432 U.S., at 114-16, that if pretrial procedures have been unduty suggestive the Court must determine whether an in-court identification will be the product of the suggestive procedures or whether instead it is independently reliable. The factors to be considered include (1) the witnesses opportunity to view the perpetrator at the time of crime, (2) the witnesses degree of attention, (3) the accuracy of his prior description of the per-petrator, (4) the level of certainty demonstrated at the confrontation, (5) the time between the crime and the confrontation.

The instant record reveals from the "Statement Of Facts at pgs. 1 to 10"    hereby realleged herein this paragraph as though fully set forth here that alleged witnesses Jessie Kenley and Alicia Lunchinsky were informed by Steelton, Pennsylvania Police Officer Robert Gaither that the Harrisburg, Pennsylvania Police Department had two possible suspects in custody and the two (2) vehicles in question in the area of N. 6th Street, Harrisburg, Pennsylvania. Steelton Police Officer Gaither drove alleged wit-nesses Jessie Kenley and Alicia Lunchinsky to N. 6th Street, where said said police conducted an "impermissibly suggestive" identification procedure, i.e., appellant was escorted by Harrisburg Police over to Steelton Police Officer Gaither's patrol car in handcuffs where said witnesses were permitted to observe and identify appellant in a "one-on-one showup" which clearly pointed to him as the suspect of said crime, there-by DENYING appellant procedural due process of equal protection of the laws pursuant to the 14th Amendment.

1). <u>The Opportunity To View The Perpetrator At The Time Of Crime:</u>

Instant record reveals that alleged victim/witness Jessie Kenley testified that he had his girlfrien Alicia Lunchinsky to drive him to Hilmar's Bar located on Adams & Harrisburg Streets, where he got out and approached individuals about buying a speake See Exhibit "A-1" (T.T. Dated March 15, 1994, at Pgs. 80-81). Also alleged witness

Alicia Lunchinsky testified  that she and her boyfriend Jessie Kenley pulled over on Adams 7 Harrisburg Streets, where Jessie Kenley got out the car to talk with some people about buying a speaker. See Exhibit "A-1" (T.T Dated March 15, 1994, at Pg. 159).

### 2). The Witnesses Degree Of Attention:

Alleged witness Jessie Kenley testified that the location was pretty dark, and because of his drug abuse he could not remember every detail like he could if he was not doing drugs, because it interferred with his ability to perceive things. See Exhibit "A-1" (T.T. Dated March 15, 1994, at Pgs 95-96). Also alleged witness Alicia Lunchinsky testified that after the individuals took the speaker out the car, she did not look back anymore. See Exhibit "A-1" (T.T. dated March 15, 1994, at Pg. 198).

### 3). The Accuracy Of The Witnesses Prior Description Of The Perpetrator:

Alleged witness Jessie Kenley gave the following vague and incomplete description, i.e., he alleged that on the morning in question September 6, 1992 during the robbery all he could remember is a "big necklace" because he was watching the gun the whole time. See Exhibit "A-1" (T.T. Dated March 15, 1994, at Pgs. 138-140). Also alleged witness Alicia Lunchinsky gave the following vague and incomplete description, i.e., she alleged that shw can remember a "green sweatsuit" and someone had on a "denim green jacket outfit with a hat, not sure if it was denim and if it had rhinestones on it." See Exhibit "A-1" (T.T. Dated March 15, 1994, at Pg. 189).

### 4. The Level Of Certainty Demonstrated By The Witness At The Confrontation:

The record reveals that alleged witness Jessie Kenley demonstrated "no level of certainty at the impermissibly suggestive one-on-one showup," where said witness was informed that Harrisburg Police had two (2) possible suspects in custody and the two (2) vehicles in question (red volvo and 5.0 mustang) and said witness was driven to the area of North 6th Street, Harrisburg, Pennsylvania to observe and identify appellant while in handcuffs in a setting which clearly pointed to appellant as the perpetrator of said crime. See Exhibit "A-1" (T.T. Dated March 15, 1994, at Pgs. 231-236). Also alleged witness Alicia Lunchinsky demonstrated no level of certainty at the impermissib suggestive one-on-one showup, where said witness was informed that Harrisburg Police had two (2) possible suspects in custody and the two (2) vehicles in question (red vol and 5.0 mustang) and said witness was driven to the area of North 6th Street to observ

and identify appellant while in handcuffs in a setting which clearly pointed to appel-
lant as the perpetrator of said crime. See Exhibit "A-1" (T.T. Dated March 15, 1994,
at Pgs. 268-270).

### 5. The Length Of Time Between The Crime And The Confrontation:

Instant record reveals that alleged witness Jessie Kenley was informed twenty (20)
minutes after said crime occurred that Harrisburg Police had two (2) possible suspects
in custody. Immediately thereafter, said witness was driven to the area of N. 6th
Street, where an impermissibly suggestive confrontation was held. See Exhibit "A-1"
(T.T. Dated March 15, 1994, at Pgs. 231-236). Also alleged witness Alicia Lunchinsky
was informed twenty (20) minutes after said crime occurred that Harrisburg Police had
two (2) possible suspects in custody. Immediately thereafter, said witness was driven
to the area of N. 6th Street, where an impermissibly suggestive confrontation was held.
See Exhibit "A-1" (T.T. Dated March 15, 1994, at Pgs. 231-236).

Instant record also reveals that Trial Counsel Anthony Penn rendered deliberate
ineffective assistance of counsel, see Strickland v. Washington, 466 U.S. 668 (1984),
when Trial Counsel Penn failed and refused to file a "Timely Motion To Suppress Tainted
Eyewitness Identification" of alleged witnesses Jessie Kenley and Alicia Lunchinsky
who's pretrial identification of appellant was based on an impermissibly suggestive
one-on-one showup. Trial Counsel Penn's failure to move to suppress the tainted eye-
witness identification was without reasonable basis in trial strategy and was prejudi-
cial to appellant and DENIED him of his 6th Amendment right to a fair trial. Had Trial
Counsel Penn filed a "Timely Motion To Suppress Tainted Eyewitness Identification" it
would have changed the "outcome" of trial.

In summary, the record clearly reveals that said witnesses Jessie Kenley and
Alicia Lunchinsky neither gave an "age estimate" of the perpetrator, nor gave any de-
tails as to the facial features of the perpetrator, but were permitted to give "vague
and incomplete descriptions" which had no relations to appellant, i.e., on the morn-
ing in question September 6, 1992, appellant was 20 years of age, brown skin complexic
6' feet tall, weighed 160 pounds, and wore his hair meduim length, and he had a mus-
tache.

WHEREFORE, for all the reasons stated above and the indisputable facts in support
thereto, which clearly shows and demonstrates a violation of Manson v. Brathwaite, sup
doctrine; and Strickland v. Washington, supra, (Deliberate Ineffective Assistance of

Counsel), thereby resulting in a "fundamental miscarriage of justice" as the Court
declared in Commonwealth v. Lawson, 549 A.2d 107 (Pa. 1988); and Murray v. Carrier,
477 U.S. 478 (1986), all of which requires this Honorable Court to GRANT appellant
a new trial and/or an immediate discharge from the unlawful physical confinement that
he now so bears.

> 4) whether Trial Counsel rendered deliberate assistance of counsel and acted
> in criminal conspiracy therewith Dauphin County District Attorney's
> Office to DEPRIVE petitioner of right guaranteed by Pa.Const.Art. I, §
> 9 and the 6th Amendment when he refused to either request a "no adverse
> inference instruction" or "conduct a colloquy specifically waiving the
> instruction."

In Commonwealth v. thompson, 674 A.2d 217 (Pa. 1996), the Court held that "to
establish an ineffective assistance of counsel claim, appellant must first demonstrate
that the underlying claim is of arguable merit; then, that counsel's action or inaction
was not grounded on any reasonable basis designed to effectuate appellant's interest;
and, finally, that but for the act or omission in question, the outcome of the proceed-
ings would have been different." The Court in Commonwealth v. Thompson, supra, further
held that "the no adverse inference instruction embodied the concept that one cannot be
compelled to give evidence against oneself, which is at the heart of Article I, Section
9 of the Pennsylvania Constitution. The Court did not find the no adverse inference
instruction to be a required instruction in all criminal cases, but concluded that when
requested the charge must be given."

Instant record reveals that Trial Counsel Anthony Penn rendered deliberate in-
effective assistance of counsel when he failed and refused to request a "no adverse
inference instruction" since the no adverse inference charge in light of the fact appe-
llant did not testify, reminds the jury not to assume guilt by virtue of appellant's
silence. Trial Counsel Penn's inaction was not grounded on any reasonable basis design-
ed to effectuate appellant's interest and said inaction was prejudicial to appellant's
case, where the Court permitted the Commonwealth to call alleged witnesses Jessie Kenley
and Alicia Lunchinsky who admitted that they "intentionally" withheld evidence from
Court Officials and gave "false and perjurious" testimony before the jury, which accuse
appellant of crimes and offenses he did not commit. Had Trial Counsel Penn requested
a "no adverse inference instruction" charge to the jury the outcome of the proceedings
would have been different. See Commonwealth v. travaglia, 541 Pa. 108, 661 A.2d 352.

Including Trial Counsel Penn refusing to introduce during trial Exhibit No. 2 "Defend-
ant's Photograph," which was taken the morning in question September 6, 1992 and which
would have supported appellant's allegations that he was taking said photo at the time
alleged crime occurred, and further said "Exhibit" was introduced during appellant's
<u>first</u> trial, which resulted in a hung jury. * * * And it can be inferred that Trial
Counsel Penn acted in criminal conspiracy therewith Dauphin County District Attorney's
Office to DEPRIVE appellant of right guaranteed by Pa.Const.Art. I, § 9 and the 6th
Amendment to effective assistance of counsel and a fair trial.

WHEREFORE, for the specific reasons stated above, and the legal authority in sup-
port thereto, which clearly shows and demonstrates Trial Counsel rendered deliberate
ineffective assistance of counsel and DENIED appellant a fair trial, thereby resulting
in a "fundamental miscarriage of justice" as the Court declared in <u>Commonwealth v. Lawson</u>,
549 A.2d 107 (Pa. 1988); and <u>Murray v. Carrier</u>, 477 U.S. 478 (1986); all of which requires
this Honorable Court to GRANT appellant a new trial and/or an immediate discharge from
the unlawful physical confinement that he now so bears.

5 ) Whether the evidence was insufficient to establish the verdict of
guilty where the evidence was so unreliable and/or contradictory that
no reasonable fact finder could find petitioner guilty of "falsely"
accused charges beyond a reasonable doubt of which he is actually
innocent of.

The law is clearly established that the prosecution bears burden of proving all
elements of offense charged, and must persuade fact finder beyond a reasonable doubt
of facts necessary to establish each of those elements; the beyond-a-reasonable-doubt
requirement applies in State as well as Federal Proceedings. See <u>Sullivan v. Louisiana</u>,
133 S.Ct. 2078 (1993). and

Instant record reveals that alleged witness Jessie Kenley testified that he smoked
"cocaine and was high" on the morning in question September 6, 1992 and that "he was
fiending and craving for more cocaine so he was trying to sell a speaker to buy more
cocaine." See Exhibit "A-1" (T.T. Dated March 15, 1994, at Pgs. 91-93). Alleged witness
Kenley also testified that "the location was pretty dark, and because of his drug abuse
he could not remember every detail like he could if he was not doing drugs, due to the
fact it interferred with his ability to perceive things." See exhibit "A-1" (T.T. dated
March 15, 1994, at Pgs. 95-96). Alleged witness Kenley further testified that he in-
tentionally "lied and did not tell the truth" to Police and State Court Officials

because he did not want his mother and associates to know the truth that he was on the streets doing drugs. See Exhibit "A-1" (T.T. Dated March 15, 1994, at Pgs. 106-108).
In addition thereto, witness Kenley testified that "he withheld information concerning a $100.00 dollar transaction, because he did not want the police to know the real reason he was on Adams & Harrisburg Streets." See Exhibit "A-1" (T.T. Dated March 15, 1994, at Pgs. 110-113). and

Instant record also reveals that alleged witness Alicia Lunchinsky (Jessie Kenley's girlfriend) admitted under Oath that " she lied and withheld evidence from state Court Officials by only telling a little bit of what happened, and not telling the whole story of what happened, because she wanted to be loyal to her husband." See Exhibit "A-1" (T.T. Dated March 15, 1994, at Pgs. 181-186); all of which the foregoing clearly shows that the testimony of alleged witnesses Jessie Kenley and Alicia Lunchinsky is so "unreliable" that a verdict of guilty cannot be based thereon. See Commonwealth v. Farquharson, 467 Pa. 50,60, 354 A.2d 545,550 (1976), where the Court held that:

> "Where evidence offered to support a verdict of guilty is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, a jury may not be permitted to return such a finding."

Instant record further reveals that evidence was received that placed appellant at the scene of the crime, but was insufficient to establish his "guilt beyond a reasonable doubt," i.e., evidence was received from the Commonwealth's key witness "the gun man himself" Emmet Eden who cooperated with Dauphin County District Attorney's Office in exchange for a "lesser sentence" in violation of Napue v. Illinois, 360 U.S. 264 (1959), testified that appellant neither participated in the robbery, nor did appellant have any knowledge of the robbery. See Exhibit "A-1" (T.T. Dated March 15, 1994, at Pgs. 62,73). Also witness Leloand Nelson a photographer testified that he took a photo of appellant on the morning in question September 6, 1992 an saw appellant drive off afterwards, and at no time did he witness a robbery. See Exhibit "A-1" (T.T. Dated March 15, 1994, at Pgs. 329-232). In addition thereto, witness Debbie Potts who did not know appellant, but exchanged telephone numbers with him on the morning in question September 6, 1992, testified that "she saw photographer Leloand Nelson take a photo of appellant and she, too, saw no robbery." See Exhibit "A-1" (T.T. Dated March 15, 1994, at Pgs. 345-349); all of which clearly shows and demonstrates that the evidence received was insufficient to substantiate the verdict of guilty where appellant did not commit the falsely accused charges of robbery, conspiracy and recklessly endangering another person at Commonwealth v. Holmes, No. 3344 C.D. 1993, nor did the Commonwealth substantiate such charges before the jury.

WHEREFORE, for the specific reasons stated above and the indisputable facts and law in support thereto, which shows and demonstrates that the evidence received was insufficient to substantiate the verdict of guilty "beyond a reasonable doubt" of charges which appellant  is "actually innocent of," thereby resulting in a "fundamental miscarriage of justice" as the Court declared in Commonwealth v. Lawson, 549 A.2d 107 (Pa. 1988); and Murray v. Carrier, 477 U.S. 478 (1986); all of which requires this Honorable Court to GRANT appellant a New Trial and/or an immediate DISCHARGE from the unlawful physical confinement that he now so bears, for which  appellant will forever pray.

Respectfully Submitted,

Dated: March    23, 1999.

Jerome K. Holmes, pro se

## PROOF OF SERVICE

I certify that on March 23, 1999, I mailed a copy of this pleading "Brief For Appellant" with all relevant legal documents attached thereto and sent same to the parties at the addresses listed below:

David A. Szewczak, Prothonotary
Superior Court of Pennsylvania
Office of the Prothonotary
Fulton Building, 9th Floor
200 North Third Street
Harrisburg, Pennsylvania 17101

Jeffrey B. Engle, Assistant District Attorney
Dauphin County Courthouse
Front & Market Streets
Harrisburg, Pennsylvania 17108-1295

Jerome K. Holmes
Jerome K. Holmes, pro se
#DJ-3328, SCI-Mahanoy
301 Morea Road
Frackville, Pa. 17932



FILED
HARRISBURG

DEC 2 0 2000

MARY E. D'ANDREA, CLERK
Per_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JEROME K. HOLMES,:
             Petitioner      :
                             :

                             :
            vs.              :     CIVIL ACTION NO. 1:CV-00-1942
                             :     (Judge Rambo)
                             :

ROBERT SHANNON, ET AL.,     :
            Respondents    :

## CERTIFICATE OF SERVICE

       This is to certify that a copy of the Respondents' Brief in Opposition to Motion to Dismiss Petition for Writ of Habeas Corpus in the above-captioned matter was sent, on the below stated dated, to the Petitioner, Jerome Holmes, DJ-3328, at the State Correctional Institution at Mahanoy, 301 Morea Road, Frackville, Pennsylvania 17932.

                             *James P. Barker/dmm*
                             James P. Barker
                             Deputy District Attorney
                             Dauphin County Court House
                             Front and Market Streets
                             Harrisburg, Pennsylvania 17101
                             (717) 255-2770
                             Attorney for Respondents

Dated:  December 20, 2000